Raymond F. HOLMES, Appellant,

v.

Joseph J. BEVILACQUA, Individually and in his official capacity as Commissioner, Department of Mental Health and Mental Retardation of the Commonwealth of Virginia and the Department of Mental Health and Mental Retardation, Appellees.

No. 84–1916.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 3, 1986.

Decided June 17, 1986.

Robert P. Geary (Geary & Davenport, Richmond, Va., on brief), for appellant.

Henry M. Massie, Jr. (Sands, Anderson, Marks & Miller, Richmond, Va., on brief), for appellee Joseph J. Bevilacqua.

Mary Yancey Spencer, Asst. Atty. Gen., Richmond, Va., on brief), for appellee Va. Dept. of Mental Health and Mental Retardation.

Before WINTER, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, CHAPMAN and WILKINSON, Circuit Judges.

CHAPMAN, Circuit Judge:

Plaintiff, a black male, sued Joseph J. Bevilacqua, individually and in his capacity as Commissioner, Department of Mental Health and Mental Retardation of the Commonwealth of Virginia, and the Department of Mental Health and Mental Retardation (MH/MR or the Department) alleging racial discrimination under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff alleged discrimination in the defendants' failure to promote him to the position of Deputy Commissioner of MH/MR. At the conclusion of the plaintiff's case, the district court granted defendants' motion to dismiss under Federal Rule of Civil Procedure 41(b).[1] The plaintiff appeals, contending that the district court erred in finding that he failed to prove a *prima facie* case of discrimination and in granting the Rule 41(b) motion. We find that the district court was correct in granting the Rule 41(b) motion, and we affirm.

I

Joseph J. Bevilacqua became Commissioner of MH/MR in September 1981. At that time the Department was managed by seven assistant commissioners, a deputy commissioner, and the commissioner. The plaintiff was employed in 1981 as an assistant commissioner and was one of the seven assistant commissioners serving at the time

Bevilacqua was employed as commissioner. In January 1983, a vacancy occurred in the office of deputy commissioner, and Bevilacqua appointed Howard Cullum, a white male, as temporary, part-time acting deputy commissioner pending recruitment of a permanent replacement. Prior to his appointment as acting deputy commissioner, Howard M. Cullum had been executive director of the Virginia Beach Community Services Board, and the Board had entered into a written agreement with MH/MR temporarily assigning Cullum to MH/MR as acting deputy commissioner for a period of six months. The Virginia Beach Community Service Board is known as a Chapter 10 Board because it was established pursuant to Chapter 10 of Title 37.1 of the Code of Virginia (1950), as amended, § 37.-1-194 *et seq.* Such boards are independent of state government, appointed by the localities, provide their own staffing, and receive funding locally, as well as from the state and the federal governments.

Applicable personnel rules required that the position of deputy commissioner be advertised and contain a description of the job and qualifications for applicants. The advertisement contained the following:

Description and Qualifications.

To provide executive direction to a staff of six assistant commissioners and to serve as the primary operational authority for the agency. Seeking candidates with the following attributes:

—Strong executive management background highlighted by major organizational accomplishments.

—Expert decisionmaking, leadership, organizational, and analytical skills.

—Expertise in policy development and implementation combined with effective interpersonal and communication skills.

—Prefer familiarity with Virginia Mental Health/Mental Retardation Services net-

---

1. Rule 41(b) provides in part:
   After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

work and its integration with other human service systems.

The applications for the position of deputy commissioner were received by Donna Shumate, employment supervisor, who worked for James L. Bozarth, Employee Relations Director of MH/MR. Donna Shumate screened the applicants based on the position announcement and the criteria developed for the position as deputy commissioner. In doing so she made an assessment as to whether the applicants met the qualifications as to executive management background and experience with the Department of Mental Health and Mental Retardation Community Service Board Network. Some applicants were eliminated in this screening. A second screening done by Shumate considered executive management, policy development and implementation, and communication skills; this resulted in reducing the number of applicants to five finalists. Of these five, based upon Shumate's screening criteria, plaintiff was tied for third and was ahead of Howard Cullum, who was subsequently selected as deputy commissioner.

At the time of his application to become deputy commissioner, Raymond F. Holmes was a thirty-nine year old black male who had received a Bachelor's Degree in Sociology in 1969, a Master's Degree in Special Education in 1970, and a Doctorate in Special Education in 1977. Before becoming assistant commissioner, Holmes was Southern Regional Director for Mental Retardation Services of Nevada, a region with 600,-000 people, and he had experience in directing a mental health institution and in teaching and training teachers of handicapped children. He had published two articles in the *Journal of Mental Retardation.*

Howard Cullum did not have a doctoral degree, had never published anything in a scholarly journal, and had never served as a director of a mental retardation facility. His experience had been as Executive Director of the Virginia Beach Community Services Board.

In announcing the appointment of Cullum as Acting Deputy Commissioner in January 1983, Bevilacqua issued a written memorandum to the Commissioner's staff, with copies to central office directors, facility directors, community service boards, executive directors and assistant attorneys general, which stated in part:

As you know, I appointed Howard Cullum as Acting Deputy Commissioner to assist in managing Departmental activities. Efforts to provide improved Central Office support to our State facilities and Community Service Boards is [sic] my highest priority. This is especially important as we move to a coordinated state-local system of care for the mentally disabled and substance abusers.

In announcing Howard's appointment late in December, I indicated that he would be responsible for managing our Central Office staff. Effective immediately, Howard will be responsible for management of day-to-day operations of Central Office staff. All Assistant Commissioners will report to him. I am assigning Howard responsibility for coordination of staff activities, for assignment of staff work, for setting of deadlines and for ensuring that staff work coming to me is complete.

On June 7, 1983, Bevilacqua announced his decision and offered the position of deputy commissioner to Howard Cullum. On the same date he wrote the other four finalists advising them of his choice. The letter to plaintiff from Bevilacqua stated:

Thank you very much for applying for the position of Deputy Commissioner for the Department of Mental Health and Mental Retardation. Your understanding of my style and operation requirements is obviously well understood. I appreciate your straight forward responses to my questions because they reflect your clear understanding of the mission of the Department.

It is my judgement [sic] that we need in the Central Office, the skill and experience that comes from municipal government and local community experience. For this reason, I am selecting Howard Cullum for the position of Deputy Com-

missioner. It was a difficult choice and I appreciate the support you have provided to the Department.

Plaintiff testified that in a meeting between plaintiff and Bevilacqua subsequent to the promotion decision, he expressed concern that the questions asked of him at the interview did not touch upon his municipal government experience or his community experience. He testified that Bevilacqua stated that he had made a "subjective" decision in filling the position. In applying for the position of deputy commissioner, the plaintiff had submitted a nine-page "Vita" along with an additional two-page application which outlined in great detail his experience and responsibilities in all the positions he had previously held.

At trial the plaintiff's case consisted of his testimony, the testimony of Mrs. Shumate, and an exhibit book containing approximately eighteen documents. Mrs. Shumate testified as to the procedure used in giving notice of the vacancy in the position of deputy commissioner and the advertising for applicants. She also explained the system used in screening the applicants to arrive at the five finalists.

The plaintiff testified as to his education and explained his experience and responsibilities in various positions he had held in the mental health and mental retardation field. He acknowledged that he realized that the competition for the position of deputy commissioner was going to be very strong and that the other four finalists had considerable experience at the local level in community service and working with community service boards. He admitted that all finalists were very well qualified, and that "I knew that the job announcement indicated that it preferred to hire someone that was knowledgeable about the Community Service Board Network System, yes." Plaintiff also testified that he did not feel that the questions asked to him at the interview were any different from those asked to the other finalists.

The exhibits contained the "Interview Evaluation Worksheet" of each finalist and reflect that each was asked the same four questions. The nature of these questions required considerable comment from each applicant. The questions asked the applicant's views of the Department, his view of the commissioner's role, his view of the deputy commissioner's position and its relationship to the commissioner, and his opinion as to any changes to be made for the future. Information as to the applicant's experience in the community services area came from the written application submitted and the resumes submitted with the applications.

In answering questions from the court, plaintiff testified that there were so few blacks in executive management positions in the MH/MR department that he felt he should have been given a preference when being considered for promotion.

At the conclusion of the plaintiff's case, the defendants made a motion under Rule 41(b) for a dismissal on the grounds that upon the facts and the law the plaintiff had shown no right to relief. In addition to the evidence presented by the plaintiff, the court had before it approximately thirty-four documents introduced by the defendants. These exhibits were considered by the court in granting the motion to dismiss. The court stated:

I have, of course, examined the exhibits in the case. I have been familiar with the case since it was filed and have followed the case along and have had a final pre-trial conference, and have gone over with the lawyers the pertinent facts in the case. And I am not in a position to say that there is evidence from which I can conclude that a mistake was made.

The court concluded:

There is no evidence that your situation is distinguished by your race. There is no evidence from which I can draw an inference that what happened to you was because of your race. These things happen, and you are black. Not these things happen because you are black. The law requires that the word "because" be the conjunction.

**146**

II

Plaintiff contends that the district court erred in finding that he had failed to prove a *prima facie* case of discrimination and in dismissing his case in response to the Rule 41(b) motion. This is a disparate treatment case, and a *prima facie* case may be established by direct evidence of discrimination or by indirect evidence whose cumulative probative force, apart from the presumption's operation, would suffice under the controlling standard to support as a reasonable probability the inference that but for the plaintiff's race he would have been promoted. *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 242 (4th Cir.1982). Without such evidence, the claimant must resort to the *McDonnell Douglas*[2] presumption with all of its ensuing complexities.

Holmes presented no direct or indirect evidence of discrimination. Under *McDonnell Douglas*, to establish his *prima facie* case of employment discrimination, Holmes must show (i) that he belongs to a racial minority; (ii) that he applied and was qualified for the job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. In establishing this formulation, the Supreme Court noted, "The facts necessarily will vary in Title VII cases, and the specification above of the *prima facie* proof required from the [plaintiff] is not necessarily applicable in every respect in differing factual situations." 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

The underlying factual situation in *McDonnell Douglas* is quite different from the present case. In *McDonnell Douglas*, proof of a *prima facie* case was not seriously contested. There the plaintiff applied for a mechanic's position for which he was qualified and was rejected. After his rejection, the position remained open and this became the fourth *McDonnell Douglas* requirement in the *prima facie* proof scheme. The Supreme Court explained in

*International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977), that while the *McDonnell Douglas* four-prong scheme does not require direct proof of discrimination, it does require that the alleged discriminatee at least show that his rejection "did not result from the two most common legitimate reasons on which an employer might rely to reject a job application: an absence or relative lack of qualifications or absence of a vacancy in the job sought." Therefore, in a factual situation in which persons apply sporadically for a vacant position and are rejected before all applicants are interviewed, it becomes important in establishing a *prima facie* case of discrimination that the plaintiff applied and was qualified, but was rejected only to have the job remain open and later be filled by a person of equal qualification. Leaving the job open is the element that justifies the presumption of racial discrimination and makes a *prima facie* case. By not hiring a qualified black and continuing to search for a qualified person other than a black, the employer has acted in such a way as to justify the presumption of discrimination and to require such employer to explain its action.

Holmes, seeking a promotion, was one of the persons who applied for the position of deputy commissioner, the second highest level position in the Virginia MH/MR Department. Five applicants were found qualified in the screening process. All five were interviewed by the defendant Bevilacqua and the employee relations director Bozarth. Each of the finalists was asked the same four questions about his views of the Department, the commissioner's role, the deputy commissioner's role and relationship to the commissioner, and changes for the future. In addition to the oral interview, Bevilacqua had the applications and resumes of the five finalists explaining their prior experience. The commissioner justified his choice of Cullum on the grounds of his skill and experience in dealing with municipalities and local govern-

2. *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

ments. The promotion of Cullum and the rejection of the plaintiff and the other three finalists was simultaneous, and the job did not remain open. Thus, contrary to the fact pattern in *McDonnell Douglas,* the employer could not put forth as a legitimate reason for rejection the fact that there was no vacancy. Instead, the promotion method used was such that the vacancy remained open only until one of the five qualified and interviewed finalists was chosen.

■ The question becomes whether the *McDonnell Douglas* four prong proof scheme is applicable in a factual situation in which one of five qualified employees is promoted and the vacancy ceases after the promotion. We hold that the four-prong proof scheme is applicable, and under the fourth prong, since the plaintiff cannot prove that the vacancy remained open after he was rejected, he must present some other evidence that his race was a factor considered by his employer in not granting him the promotion. There must be some evidence that race was a determining factor in the employer's decision.

Plaintiff argues that his interview was brief and he was asked only four questions. By his own testimony, the interview lasted twenty minutes, and the Interview Evaluation Worksheets for each of the five candidates show that they were each asked the same four questions. Plaintiff contends that he was more qualified than Cullum, but in his testimony he admitted that all five finalists were "very well qualified."

■ Without the fourth prong of the *McDonnell Douglas* proof scheme, any qualified minority applicant who is denied promotion could make out a *prima facie* case by merely proving his race, his qualifications, and his failure to be promoted. The proof of the first three prongs of the scheme only set the stage for the fourth, which tips the scale in favor of a *prima facie* case,. because the fourth prong requires proof that points toward illegal discrimination. In *U.S. Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), the Court

stated that the *McDonnell Douglas* proof scheme does not require direct proof of discrimination to prove a *prima facie* case of discrimination, but it did not find the first three prongs of the test to be sufficient. In *Lovelace* we held that a plaintiff may establish his discrimination case through direct evidence of discrimination or through the cumulative effect of indirect evidence of the employer's motivation. In the present case the plaintiff has failed to present any evidence, direct or indirect, of racial discrimination in the defendant's decision to promote Cullum and not to promote plaintiff. Without this element, the plaintiff did not make out a *prima facie* case and is not entitled to the presumptions that would accompany such a case.

### III

This case ended upon the defendants' successful motion for dismissal under Federal Rule of Civil Procedure 41(b). This rule requires the judge, as the trier of fact, to weigh and consider all of the evidence, and he may sustain the motion even though the plaintiff may have presented a *prima facie* case. *See* 5 J. Moore, J. Lucas & J. Wicker, Moore's Federal Practice ¶ 41.13(4) (2d ed. 1985). The district judge found that there was no evidence of discrimination, and this finding is protected by Federal Rule of Civil Procedure 52(a). On appeal this finding of the district court may be set aside only if clearly erroneous. *Anderson v. Bessemer City, North Carolina,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). This finding of the district court is not clearly erroneous. The district court had before it the plaintiff's case in chief; the pretrial order; all exhibits of the plaintiff and the defendants, which included the application forms and resumes submitted by all five finalists; the interview evaluation sheets on all finalists; and the letter of rejection to Holmes, which revealed the defendants' reasons for not selecting him.

Although plaintiff claimed that Bevilacqua's decision was subjective, this court in *Page v. Bolger,* 645 F.2d 227, 230 (4th Cir.), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70

L.Ed.2d 206 (1981) held: "the mere fact that subjective criteria are involved in the reason articulated by an employer does not prevent according it such sufficient rebuttal weight to dispel the inference of discrimination raised by the *prima facie* case." Local community and municipal government experience is not subjective and is the reason given by Bevilacqua in his letter to the plaintiff explaining Bevilacqua's promotion of Cullum.

This case at the present juncture is similar to *Aikens, supra,* in which the Court expressed its surprise that the parties and the Court of Appeals were still addressing the question of a *prima facie* case. The present appellant has raised the issue that the district court erred in failing to find that he established a *prima facie* case of employment discrimination, and we have addressed this question. However, the district court in granting the Rule 41(b) motion addressed the ultimate question of discrimination *vel non* and found that there was no racial discrimination in this case. This ruling was made without requiring any testimony from the defendants, but the court had the advantage of all the defendants' exhibits. The plaintiff complained that he was denied the right to cross examine Bevilacqua, but if his attorney felt such testimony was necessary to the plaintiff's case, he could have called the defendant as a hostile witness under Federal Rule of Evidence 611(c) at any time during the presentation of the plaintiff's case.

In *Aikens* the Court stated:

The *prima facie* case method established in *McDonnell Douglas* was "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco, [Construction Corp. v. Waters], supra,* [438 U.S. 567] at 577 [98 S.Ct. 2943 at 2949, 57 L.Ed.2d 957]. Where the defendant has done every-

thing that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff." [*Texas Department of Community Affairs v.*] *Burdine, supra,* [450 U.S. 248] at 253 [101 S.Ct. 1089, at 1093, 67 L.Ed.2d 207].

*Id.* 460 U.S. at 715, 103 S.Ct. at 1482.

■ In the present case, when the judge acted upon the Rule 41(b) motion, the issue was no longer one of a *prima facie* case, and the question was whether the defendant had intentionally discriminated against the plaintiff. The district court's finding of no discrimination is not clearly erroneous, and we affirm.

AFFIRMED.

MURNAGHAN, Circuit Judge, concurring:

The *en banc* majority opinion rests on two grounds: 1) a *prima facie* case of disparate treatment permitting an inference of racial discrimination had not been made out and 2) if made out, nevertheless, the district judge, acting under Fed.R. Civ.P. 41(b), was empowered to find, as an ultimate fact, that discrimination had not taken place, *i.e.,* that the *prima facie* case had been successfully rebutted.

On that second ground I concur. However, ground no. 1 is not necessary for decision[3] and, as a *dictum* for which I perceive the support to be questionable, should not, I submit, be relied on, especially in an *en banc* opinion engaging all members of the Court on regular active service.

I am authorized to say that PHILLIPS, J., joins in this opinion.

---

**3.** *Cf. Eastern Associated Coal Corp. v. Director, Office of Workers' Compensation Programs,* 791 F.2d 1129, 1131 (4th Cir.1986) (in circulation)

("We decline to address these issues because they do not affect the outcome of this case.").

HARRISON L. WINTER, Chief Judge, dissenting:

At the close of plaintiff's case, defendants moved under Fed.R.Civ.P. 41(b) for dismissal of the complaint. They specifically argued that "plaintiff has not made out a prima facie case of race discrimination under Title VII," and that plaintiff failed to meet "the *Burdine* standard" and that his case was "not like the *McDonnell Douglas* case ..." As I read the somewhat enigmatic, rambling oral opinion of the district court, it decided only that issue, namely that plaintiff had failed to prove a prima facie case. The correctness of that ruling, and not how the case should be decided on the merits, is the sole issue before us.*

In my view, the district court decided the question incorrectly. My reasons are set forth in the majority panel opinion, *Holmes v. Bevilacqua*, 774 F.2d 636 (4 Cir.1985), and need not be repeated at length here. In agreement with *Bell v. Bolger*, 708 F.2d 1312 (8 Cir.1983), I think that in a promotion case, plaintiff proved a prima facie case when he proved that he was black, he was qualified for the job, he was rejected, and a white applicant was promoted.

Even if the majority of the in banc court is correct in saying that there must be further proof of the employer's improper motivation, I think that there was such evidence. The individual defendant, Bevilacqua, sought to justify his promotion of Cullum on the ground of his "skill and experience that comes from municipal government and local community experience," yet plaintiff's proof showed that when candidates for promotion were interviewed, they were not interrogated in these areas. As the majority recognizes, any information that Bevilacqua gained about the applicants in this regard was fortuitous. To my mind, the claimed criteria for appointment are suspect. Unless they represent an afterthought, why else would an employer fail to inquire about the very factors on which he claims to have made his choice? If the claimed criteria are not bona fide, the inference may properly be drawn that there was a hidden, invidious reason for promoting Cullum rather than the black plaintiff.

I respectfully dissent. I think that the judgment of the district court should be reversed and the case remanded for full trial.

SPROUSE, J., authorizes me to say that he concurs in this opinion.

---

* Relying on *U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), the majority asserts that the in banc court should concern itself only with the merits of the entire case and not whether plaintiff established a prima facie case. This assertion misapplies the holding in *Aikens*. *Aikens* was a case which "was fully tried on the merits ...", 460 U.S. at 714, 103 S.Ct. at 1481. In the instant case, only plaintiff had presented his direct case when the motion to dismiss was made. The only issue is not whether plaintiff should ultimately prevail; it is whether plaintiff proved enough to require defendants to present their defense.