884 F.2d 1391
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Arthur A. WOODARD, Plaintiff-Appellant,
v.
MAYOR AND CITY COUNCIL OF BALTIMORE, A Municipal Corporation
of Maryland, NEIGHBORHOOD PROGRESS ADMINISTRATION of the
City of Baltimore (formerly, Department of Housing and
Community Development), Defendants-Appellees.
 No. 88-3629.
 United States Court of Appeals, Fourth Circuit.
 Argued May 9, 1989.
Decided Aug. 21, 1989.
 
 Richard L. Swick for appellant.
 Eileen Antoinette Carpenter, Special Solicitor (Neal M. Janey, City Solicitor; John S. Wood, Chief Solicitor, on brief) for appellees.
 Before PHILLIPS and CHAPMAN, Circuit Judges, and FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Arthur A. Woodard (Woodard) appeals entry of judgment by the District Court in favor of defendants-appellees, the Mayor and City Council of Baltimore, in connection with Woodard's complaint of race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e-2(a). The District Judge, Judge Black, referred the case to Magistrate Goetz, for an evidentiary hearing which was held on December 17 and 18, 1987. Thereafter, the Magistrate filed his Report and Recommendation on April 11, 1988, in which the Magistrate recommended that judgment be entered for defendants. After timely exceptions were filed by Woodard and after Judge Black conducted a nonevidentiary hearing on October 16, 1988, the District Court accepted and affirmed the Magistrate's Report and Recommendation and entered judgment in favor of defendants.
 
 
 2
 Woodard, a black male, was hired by the Department of Housing and Community Development ("HCD") of the City of Baltimore (City) on January 8, 1980 to fill the position of a city planner. The person who made the determination to hire Woodard was Franz Vidor, a white male, the Director of HCD. Prior to submission of appellant's name to Vidor for consideration as a city planner, the City's Civil Service Commission certified Woodard as qualified for the job.[1] Woodard was hired for a six-month probationary period, during which a determination was to be made by HCD as to whether the City would offer Woodard a permanent position.
 
 
 3
 Woodard had several supervisors during his tenure at HCD. His first supervisor was Alicia Sheppard, who held the position of Senior City Planner. Sheppard had worked with Woodard on a particular project during Woodard's prior employment at the City's Department of Planning and continued to work with him on that project when he was hired at HCD. Woodard next worked under the supervision of the Chief of Planning at HCD, Rhafique Khan, on at least four different projects. Sheppard found Woodard's work to be satisfactory. However, Khan communicated his dissatisfaction with Woodard's work to Vidor, stating that Woodard needed more supervision than a city planner should need.
 
 
 4
 Accordingly, Vidor decided to assign Woodard to work in connection with several projects directly under Vidor's supervision so that Vidor himself could evaluate Woodard's work. One of the projects assigned to Woodard was revision of the street address directory, a compilation of all the addresses in the City. That project was clerical in nature and was not a planning project. Woodard was asked to update the street address directory by adding any new street addresses in the City and deleting any defunct addresses. Vidor directed Woodard to work on the project on Thursdays and Fridays, and to report to him every Monday. Vidor became dissatisfied with Woodard's work with regard to the directory project, because he did not follow Vidor's instructions in certain respects. In addition to the directory work, Vidor also assigned to Woodard a planning project which involved proposed rezoning of the 1600 and 1700 blocks of Eutaw Place in the City. Vidor found Woodard's analysis in connection with that assignment to be disappointing, and subsequently terminated Woodard from his position, effective April 25, 1980, because of Woodard's unsatisfactory performance of his work.
 
 
 5
 Woodard then filed a grievance with the Equal Employment Opportunity Officer of HCD. The Equal Employment Commission ordered Vidor to reinstate Woodard effective April 29, 1980 because of insufficient documentation regarding Woodard's termination. Woodard was ultimately reinstated on May 13, 1980. After learning of Woodard's reinstatement, Vidor inquired as to the date upon which Woodard's probationary period would end.
 
 
 6
 After reinstatement, Woodard was assigned to work for Shirl Byron who was a principal city planner. On June 7, 1980, at the end of Woodard's probationary period, Vidor determined again to terminate Woodard.
 
 
 7
 Vidor testified before Magistrate Goetz that Vidor needed planners who worked with minimal supervision and that Woodard lacked the ability to do so.[2] Vidor also testified that he sought to hire more black planners. Thomas Davis, a black male planner, further testified that Vidor attempted to hire more members of minority groups by participating in recruitment programs at local colleges and universities, and recalled Vidor's disappointment on one occasion when a black male, who had been hired, subsequently telephoned to say that he would not be joining HCD because he had accepted a better job. The Magistrate credited Davis' testimony rather than that of Woodard's witnesses, William Gray and Arnold McCulloch. As to Gray, he testified that black males were not treated by Vidor with the same respect as other employees. However, the Magistrate did not find Gray's testimony credible in that regard because of the fact that Vidor had assisted Gray in his quest for a promotion and had promoted Davis instead of white applicants on several occasions. As to McCulloch, he testified that in his position as a draftsman, he was familiar with the work of city planners and that Woodard's work was "up to par" with other first-time planners. Magistrate Goetz, in his Report and Recommendation, characterized "both" Gray and McCulloch as "singularly unimpressive witnesses."
 
 
 8
 In sum, the Magistrate found that Vidor's decision to terminate Woodard was made in "good faith" based upon unsatisfactory job performance and not upon race. Judge Black, who adopted Magistrate Goetz's findings of fact, also concluded that Woodard "has not demonstrated that he was discriminated on the basis of race, sex, or any combination of the two."[3]
 
 Title VII
 
 9
 Woodard takes issue with the trial court's conclusions (1) that Woodard failed to prove a prima facie case of discrimination and (2) that, even if a prima facie case had been established, appellees came forth with a legitimate nondiscriminatory reason for discharging Woodard.
 
 
 10
 This is a disparate treatment case, and a prima facie case may be established by direct evidence of discrimination or by indirect evidence whose cumulative probative force, apart from the presumption's operation, would suffice under the controlling standard to support as a reasonable probability the inference that but for the plaintiff's race he would have been prompted. Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir.1982). Without such evidence, the claimant must resort to the McDonnell Douglas[2] presumption with all of its ensuing complexities.
 
 
 11
 Holmes v. Bevilacqua, 794 F.2d 142, 146 (4th Cir.1986). To establish a prima facie case of discriminatory discharge in a case in which the employer presents no "direct or indirect" evidence of discrimination, id. at 147, an employee must show that: (1) he or she was a member of the protected group; (2) the employee was qualified for the job and his or her job performance met the employer's legitimate expectations; (3) despite his or her qualifications and performance, he or she was discharged; and (4) after his or her dismissal, the position remained open and the employer continued to seek applicants of complainant's qualifications. See Johnson v. Flowers Industries, Inc., 814 F.2d 978, 980 (4th Cir.1987); Holmes v. Bevilacqua, 794 F.2d at 146; Gairola v. Commonwealth of Va. Dep't of General Services, 753 F.2d 1281, 1286 (4th Cir.1985). In this case, while it may well be arguable that there is some evidence of indirect discrimination, the trial court's findings to the contrary, discussed infra in this opinion, are well supported by substantial evidence. As to the McDonnell Douglas "presumption," the first element of that standard was not contested. As to the second and third elements, Judge Black found that Woodard failed to prove that his performance met the employer's legitimate expectations, and that "the record indicates quite plainly that it was Plaintiff's sub-par performance that resulted in his being fired."[4]
 
 
 12
 While the last of the four elements is not present in this case, Woodard was entitled to the opportunity--which he was afforded--instead to come forward with some other evidence of discriminatory treatment to establish a prima facie case, such as dissimilar treatment of others similarly situated, i.e., in this case, different and more favorable treatment of whites and/or females. See Holmes v. Bevilacqua, 794 F.2d at 147. However, because Woodard has not shown a "basis for meaningful comparison" between the complainant and others similarly situated, Payne v. FMC Corp., 609 F.Supp. 1132, 1134 (S.D.W.Va.1985), he has not established prima facie that he received different or less favorable treatment than whites or females. Id. See also Ratliff v. City of Milwaukee, 608 F.Supp. 1109, 1126 (D.Wis.1985). During the proceeding before Magistrate Goetz, Woodard attempted to compare himself, as a probationary employee, to two beginning white female planners to show that, despite his qualifications for the position and level of performance, he was the victim of disparate treatment. But Woodard did not present any meaningful basis for comparison between his work and the work of those two white females other than the testimony of one witness who stated that the work of those two persons "wasn't necessarily that great." No evidence was introduced specifically comparing the work of those two persons to Woodard's work; nor was any evidence introduced showing that any supervisor had complained about the work of those two females. Therefore, the District Court concluded that the Court cannot find that Woodard demonstrated that his "job performance met his employers [sic] legitimate expectations"; or, in effect, that Woodard was treated differently from other newly hired planners.
 
 
 13
 The trial court's findings of fact may not be disturbed on appeal unless clearly erroneous. If there are two permissible views of the evidence and the district court chooses one view rather than another, there is no clear error. Davis v. Food Lion, 792 F.2d 1274, 1277 (4th Cir.1986). Woodard's quarrel is with the District Court's finding that plaintiff was fired because of his unsatisfactory performance--that he (Woodard) was not meeting the legitimate expectations of his employer. Woodard testified that his performance was satisfactory and Sheppard so testified as well. Byron also expressed no dissatisfaction with Woodard's work. On the other hand, Vidor found Woodard's work unacceptable with regard to two projects and testified that he (Vidor) had received complaints about Woodard's work from Khan. Thus, while the evidence was not consistent as to the quality of Woodard's performance, the trial court found that, regardless of Woodard's perception of his own work, Vidor was entitled to terminate Woodard based upon Vidor's determination of Woodard's unsatisfactory performance and that Vidor had so done in good faith. This appellate court finds that no clear error was committed by the trial court in that regard, and that the trial court's determination is supported by substantial evidence in the record.
 
 
 14
 Even if Woodard had established a prima facie case of discrimination, the trial court properly concluded that appellees had come forth with a legitimate nondiscriminatory reason for discharging Woodard--a reason which was not shown to be a pretext for intentional discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Unsatisfactory job performance is a permissible reason for discharge which dispels any inference of discrimination arising from a prima facie case. See Gairola v. Commonwealth of Va. Dep't of General Services, 753 F.2d at 1287; Smith v. Flax, 618 F.2d 1062 (4th Cir.1980); Ratliff v. City of Milwaukee, 608 F.Supp. at 1126; Caldwell v. Mobil Chemical Co., 39 FEP Cases 1262, 1263 (D.N.J.1985). Woodard argues that Vidor's proffered reason is pretextual because the evidence as to Woodard's performance was inconsistent and thus insufficient to support a finding that Woodard's performance was unsatisfactory. However, as noted supra in this opinion, the testimony of Vidor as to Woodard's performance and the testimony of Davis as to Vidor's nondiscriminatory actions was found credible by the Magistrate and adopted by the District Court. Because that adoption is fully supported by the evidence, it may not and will not be disturbed in this appeal by this court. In that regard, it is to be noted that, as Judge Black stated, although Woodard "may have had the bad luck to go to work for a demanding employer," that alone, or in combination with any other evidence in this case, does not require a determination of employment discrimination against Woodard.
 
 
 15
 For the reasons stated in this opinion, the judgment of the District Court is
 
 
 16
 AFFIRMED.
 
 
 
 [2]
 McDonnell Douglas v. Green, 411 U.S. 792 (1973)
 
 
 [1]
 Woodard holds a Bachelor of Science Degree in Sociology from Towson State College and had completed approximately one-half of the requirements for a Masters Degree in Urban Planning and Analysis at Morgan State College prior to January 8, 1980
 
 
 [2]
 At the time Vidor was in the course of deciding to terminate Woodard, Vidor reviewed a memorandum written by Robert Wales, the Chief of Planning of HCD, regarding Wales' discussion with two of Woodard's supervisors during the latter's previous employment at the Department of Planning. One of those former supervisors indicated that Woodard needed "clear, concise direction and supervision" in connection with his work
 
 
 [3]
 Woodard contends that he was discriminated against based on either his race, or sex, or both. While a number of white males and black females were employed at HCD, there were few black males. Woodard argues that black males constitute a subgroup for purposes of Title VII claims of discrimination. The District Court's finding, however, that Vidor specifically attempted to hire black males renders unnecessary any consideration of that issue
 
 
 [4]
 Woodard also contends that Vidor's testimony established that Woodard was qualified for the position. However, Vidor testified only that Woodard was qualified at the time he was hired and that because Woodard had attended planning school, Vidor assumed that Woodard understood planning. Vidor's testimony did not indicate that Woodard's performance met Vidor's expectations; rather, Vidor's testimony indicated just the opposite