**Sharon HORTON, Plaintiff,**

**v.**

**DIXIE–NARCO, a West Virginia corporation; Dihanna R. Vaught, Executrix of the Estate of Randy Ashbaugh, and Richard W. Bline, Defendants.**

**Civ. A. No. 88–0062–M(K).**

United States District Court,
N.D. West Virginia,
Martinsburg Division.

Oct. 23, 1989.

Lacy I. Rice, Jr., and Joan L. Casale, Rice, Douglas & Shingleton, Martinsburg, W.Va., for plaintiff.

J. Stephen Poor, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Stephen R. Kershner, Avey & Steptoe, Martinsburg, W.Va., for defendants.

## MEMORANDUM OPINION

KIDD, District Judge.

On July 17, 1989, defendants Dixie–Narco, Inc. ("Dixie–Narco"), Dihanna R. Vaught, Executrix of the Estate of Randy Ashbaugh, and Richard W. Bline filed their motion for summary judgment seeking dismissal of plaintiff Sharon Horton's civil action. Said motion, having been fully briefed by the parties, is ripe for disposition.

In that the Court's jurisdiction is based upon 42 U.S.C. § 2000e et seq. ("Title

VII"), the Court will proceed with defendants' motion as applied to Count II, the Title VII sex discrimination claim. The remaining counts are pendant state law claims.

For purposes of this motion only, and viewing the facts most favorable to Ms. Horton, the Court makes the following findings of fact:

### Finding of Facts

1. On December 9, 1987, Dixie–Narco implemented the "Sensitive Information Policy" ("Policy") which states:

> Certain information concerning Dixie–Narco's products, designs, manufacturing equipment, and processes allows Dixie–Narco to maintain a competitive edge over its competitors. Information about these products, designs, manufacturing equipment and processes, is considered "sensitive" in nature and should not be discussed outside the work place and should never be passed or communicated to Dixie–Narco's competitors and competitors' employees. Communicating information to Dixie–Narco's competitors would be harmful to Dixie–Narco's business and to those employees who depend on Dixie–Narco for their livelihood.

> Therefore, Dixie–Narco will not hire or consider for employment any person who lives in the "immediate household" of another person employed by a competitor of Dixie–Narco. Also, Dixie–Narco will not continue the employment of any person who lives in the "immediate household" of a person employed by a competitor.

2. The Policy was primarily designed to prevent Dixie–Narco employees from resigning to work for Royal Vendors, a competitor located adjacent to Dixie–Narco and started by Ray Steeley, a former president of Dixie–Narco. Prior to issuing the Policy, several key Dixie–Narco management level employees had resigned to work for Royal Vendors.[1]

3. The Policy was gender neutral.

4. Ms. Horton, an employee with Dixie–Narco since October 6, 1977, had never been disciplined and her work performance was at all times satisfactory, meeting Dixie–Narco's legitimate expectations.

5. Ms. Horton and Greg Mason had been cohabitating for approximately five years prior to implementation of the Policy.

6. On January 11, 1988, approximately one month after implementation of the Policy, Mr. Mason resigned from his employment at Dixie–Narco to accept employment at Royal Vendors.

7. On January 29, 1988, Ms. Horton advised Dixie–Narco that she and Mr. Mason had resumed their previously uninterrupted pattern of sharing a residence; that they had decided not to terminate their long-term domestic relationship; that Ms. Horton did not intend to resign from her employment with Dixie–Narco; and that Mr. Mason did not intend to resign from his employment with Royal Vendors.

8. Although defendants at no time had any evidence, or reason to believe that plaintiff had access to or was communicating sensitive information to any competitor's employee, based upon the Policy, defendants gave plaintiff two weeks in which to terminate her domestic relationship with Mr. Mason, or resign from her employment with Dixie–Narco, Inc., or be terminated from her employment with Dixie–Narco, Inc.

9. The plaintiff conformed her conduct at all times to the paragraph in the Policy which stated that information about Dixie–Narco, Inc. products, designs, manufacturing equipment and processes, which is sensitive in nature, should not be discussed outside the work place, and should never be passed or communicated to Dixie–Narco, Inc. competitors or competitor employees. By February 12, 1988, the plaintiff had not terminated her domestic relationship with Mr. Mason, nor had she resigned. The defendants terminated the plaintiff only for her failure to comply with the second para-

---

1. Defendants assert that the Policy was instituted to protect its trade secrets and newly developed methods of operation from being disclosed under "the most likely form of information disclosure: that occurring between cohabitants."

graph of the Policy, which prohibits Dixie–Narco, Inc. employees from sharing the "immediate household" of any person employed by a competitor.

In Count II of her complaint, Ms. Horton asserts a Title VII claim for sex discrimination. To establish a cause of action under Title VII, Ms. Horton must prove that but for the defendants' motive to discriminate against her because of her sex, she would not have been fired. Ms. Horton can prove sex was a determining factor in her termination by either direct or indirect evidence of discrimination, or she may rely on the *McDonnell Douglas*'[2] judicially created proof scheme. Ms. Horton, however, has presented no direct or indirect evidence of discrimination. Therefore, the Court will proceed to the *McDonnell Douglas* scheme.

> For a plaintiff to prevail on a discrimination claim, she must first establish a four-part prima facie case:
>
> (1) that she is a member of a protected class;
>
> (2) that she was qualified for her job and her job performance was satisfactory;
>
> (3) that, in spite of her qualifications and performance, she was fired; and
>
> (4) that the position remained open to similarly qualified applicants after her dismissal.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 [93 S.Ct. 1817, 1824, 36 L.Ed.2d 668] (1973); *Holmes v. Bevilacqua,* 794 F.2d 142, 146 (4th Cir.1986) (en banc); *Smith v. Univ. of N.C.,* 632 F.2d 316, 332 (4th Cir.1980). Once this prima facie case is established, an inference of discrimination arises that may be rebutted by an employer on a showing of legitimate, nondiscriminatory reasons for the dismissal. *Smith, supra* at 332–333. Once this showing is made, the burden of proof lies with the plaintiff to show, by a preponderance of the evidence, that the employer's proffered reasons for the dismissal are a pretext. *Id.* at 333.

*Williams v. Cerberonics, Inc.,* 871 F.2d 452, 455–456 (4th Cir.1989) (Footnote omitted).

For purposes of this motion, the Court finds that Ms. Horton has established a prima facie case, having established all four parts. In response, Dixie–Narco asserts that the legitimate, nondiscriminatory reason for the discharge was Ms. Horton's violation of the Policy. Ms. Horton argues, though, that the discharge was not legitimate "because her discharge was not based upon her performance, or any evidence of any conduct damaging to the employer's present or future business interests."

The inquiry as to the employer's reason for discharge is not whether the reason is good or bad, correct or incorrect, "so long as the decision was not based on sex or other unlawful discriminatory criteria." *EEOC v. Ryder/P\*I\*E\*,* 649 F.Supp. 1282, 1288 (W.D.N.C.1986). "Bad or mistaken reasons for a decision may yet be non-discriminatory." *Holden v. City of Raleigh,* 867 F.2d 823, 829 (4th Cir.1989). There is no doubt that Ms. Horton was discharged solely for her refusal to conform to the Policy. Whether the Policy is a good policy or will achieve its purported purpose of confidentiality is not relevant since the Policy, on its face, is non-discriminatory. As such, defendants have rebutted the inference of discrimination by its showing of a legitimate, non-discriminatory reason for Ms. Horton's discharge.

The burden of proof is now on Ms. Horton to show that since Dixie–Narco's proffered reason for discharge is a pretext. This being a motion for summary judgment, Ms. Horton must now "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there

---

**2.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc., supra* at 256, 106 S.Ct. at 2514.

Ms. Horton argues that the Policy was only applied to one other employee who was also a female. However, there is no evidence that Dixie–Narco refused to apply the policy to men. Apparently, there were no men employees cohabitating with another employed at Royal Vendor or any other competitor. This is not evidence of pretext.

Ms. Horton also argues that Dixie–Horton treated female employees adversely due to male employees resigning to work for Royal Vendors. As stated by Ms. Horton: "They fired me because of a man's decision" (referring to Mr. Mason's resignation from Dixie–Narco and subsequent employment with Royal Vendors). The decision, however, was Ms. Horton's, namely, to stop cohabitating with Mr. Mason and retain her job. Although the Court is not unmindful of the difficult choice facing Ms. Horton, there was no discrimination based upon gender.

Therefore, the Court is of the opinion Ms. Horton has failed to "present affirmative evidence" that the proffered reason for discharge was pretextual.

> In our view, the plaint language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). Ms. Horton has had adequate time for discovery. As such, the defendants are entitled to judgment as a matter of law for Ms. Horton's failure to establish a sufficient showing on an essential element of her case with respect to which it has the burden of proof. Accordingly, defendants' motion for summary judgment as to Count II is GRANTED and the same is DISMISSED.

All that remains in this action are the state law pendant claims. Since the basis of this Court's jurisdiction is no longer present, the Court must decide whether it should retain jurisdiction over the pendant state claims. The Court is guided by the principles set down by the United States Supreme Court:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by providing for them a sure-footed heading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (footnote omitted). Therefore, Counts I, III, IV, and V of the complaint are DISMISSED without prejudice.

It is so ORDERED.

Judgment shall be entered accordingly and this action shall be stricken from the docket of the Court.