Katherine K. WITHERSPOON

v.

WESTINGHOUSE ELECTRIC CORPORATION.

Civ. No. L–91–2186.

United States District Court, D. Maryland.

Feb. 22, 1993.

Katherine Witherspoon, pro se.

Brian K. Williams, Baltimore, MD, for defendant.

## MEMORANDUM

LEGG, District Judge.

Plaintiff, Katherine K. Witherspoon, is a former employee of Westinghouse Electric Corporation ("Westinghouse"). On August 2, 1991, Witherspoon filed suit in this Court alleging that Westinghouse violated Title VII of the Civil Rights Act of 1964[1] by terminating her employment because of her sex (female) and race (black). On June 3, 1992, Westinghouse filed a motion for summary judgment. For the reasons stated herein, Westinghouse's motion will be GRANTED and, by separate order, judgment will be entered for Westinghouse as to all claims stated in the complaint.

---

4. Plaintiffs sought $63,000 in damages, but won only $8000.

1. 42 U.S.C. § 2000e, *et seq.*

FACTS

Plaintiff began her employment for Westinghouse effective September 25, 1969.[2] Witherspoon was hired as an Assembler and Wirer in the Integrated Logistics Support Division ("ILSD"), which is headquartered in Hunt Valley, Maryland. ILSD is responsible for providing the support services and materials necessary for those Westinghouse defense projects in which advanced electric systems are built and supplied. ILSD employs over two thousand persons at five domestic and several overseas locations.

At the time of her termination, plaintiff was working as a Project Administrator D; her primary responsibilities included preparing and compiling financial data to be used within her assigned area.

On Wednesday, November 2, 1988, at about 2:30 p.m., Witherspoon had a work-related argument with one of her co-workers, Randel W. Wood. The argument can be characterized as a "shouting match" and concerned Witherspoon's contention that Wood was refusing to provide her with sufficient assistance in solving a computer-related problem. In any event, the argument broke off and both Witherspoon and Wood returned to their respective work areas.

What happened next is set out in Wood's affidavit which is fully corroborated by the affidavit of Daniel S. Smith, an eyewitness. Wood was seated at a computer terminal when Witherspoon walked up behind him, grabbed his face with her hands, and scratched at his face and eyes with her fingernails.

Photographs of Wood disclose deep scratches on his cheeks and under his left eye. He is fortunate to have escaped serious injury to his eyes. According to Smith's affidavit, a co-worker restrained Witherspoon "by use of a 'bear hug' although her feet and legs were still kicking at Randel Wood."

Smith affidavit at ¶ 9 (Exh. 3 to defendant's summary judgment motion).

Witherspoon apparently suffers from seizures and she claims to have no recollection of the incident. The facts of the incident are uncontrovertibly documented by the affidavits of Wood and Smith.

Following the incident, Witherspoon was suspended while Westinghouse, through Holly Wellstead and Roger Richmond, who are Human Resources Managers, conducted an investigation. They interviewed several witnesses, including Witherspoon. As a result of the investigation, they decided to terminate Witherspoon for violating a plant rule against fighting.[3] The decision to terminate Witherspoon was made by Wellstead who is female and by Richmond who is an African-American. In his affidavit, Richmond testified that "at no time was Ms. Witherspoon's race, sex and/or medical condition a factor in the decision to terminate her employment" Exh. 6 to defendant's motion for summary judgment.

After her discharge, Witherspoon filed a complaint of discrimination with the Maryland Human Relations Commission and, later, with the Baltimore District Office of the Equal Employment Opportunity Commission ("EEOC"). On May 2, 1991, Chris Roggerson, District Director of the EEOC, issued Witherspoon a right-to-sue letter.[4]

On August 2, 1991, Witherspoon filed the instant *pro se* action in this Court. The complaint states that Westinghouse terminated her for the following illegal reasons:

5. **Defendant's conduct was discriminatory because it was based upon:**

A. The fact that I was a black female with no prior history of ever having been reprimanded or disciplined in any manner but yet received unfair and impartial treatment. The Department of Economic &

---

2. Plaintiff was hired on June 26, 1967, but, as a result of a two-year layoff, her credited service date is September 25, 1969.

3. Westinghouse's Employee Handbook (Exh. 12 to defendant's motion for summary judgment), states that fighting is considered an "inexcusable" offense that may result in immediate discharge. This handbook was provided to each of

Westinghouse's employees, including Witherspoon in 1985.

4. Both the Maryland Commission on Human Relations and the EEOC found that the evidence obtained during their investigations did not establish a violation of either the Maryland or the federal anti-discrimination statutes.

Unemployment Development reviewed the case and stated that there was no evident [*sic*] of gross mis-conduct as charged by Westinghouse.

B. That fact that I had a history of seizures, which, as described in a letter from the head nurse that, I was incoherent, disoriented, and unable to communicate. Her letter also stated that I was uncontrolled medically and posed a danger to myself and other employees in the work area. This letter was dated May 8, 1985.

C. Item B above was not taken into account by Westinghouse during the investigation causing an unfair and incomplete investigation resulting in my dismissal.

D. The fact that I complained to my manager on several occassions [*sic*] that I was treated unfairly and different from my co-workers to no avail.[5]

Witherspoon was originally acting *pro se*. On January 14, 1992, the Court issued an Initial Scheduling Order, which required discovery to be completed by May 4, 1992. After the discovery deadline passed, Westinghouse filed a motion for summary judgment. On June 9, 1992, Witherspoon requested that the Court appoint an attorney to represent her.[6] On July 1, 1992, this Court appointed Robert B. Webber, Esq. to represent Witherspoon. On July 29, 1992, Webber moved to reopen discovery. By Order of August 11, 1992, this Court granted the motion and reopened discovery until October 9, 1992. On October 9, 1992, the parties submitted a joint status report which stated that "[d]iscovery in this matter has been completed."

On November 12, 1992, Webber filed a motion to withdraw appearance, citing as grounds "Ms. Witherspoon's decision not to follow my advice pertaining to a fundamental issue in this case."

On November 25, 1992, this Court issued an Order granting the motion to withdraw. The Order also instructed Witherspoon that if she wished to oppose the motion for summary judgment that she must do so, in writing, on or before December 22, 1992. The Order advised Witherspoon that her response should set forth, in her own words, all facts and reasons in support of her contention that Westinghouse's decision to terminate her was based, in whole or in part, on her sex or race.[7] To date, Witherspoon has failed to file a response.[8]

## STANDARD OF REVIEW

The standard by which this Court must evaluate a summary judgment motion in an employment discrimination case is well established and need not be elaborated. In *Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989), the Court discussed the elements that a plaintiff must establish in support of a claim of employment discrimination under Title VII:

> For a plaintiff to prevail on a discrimination claim, he must first establish a four part *prima facie* case: (1) that he is a member of a protected class; (2) that he was qualified for his job and his job performance was satisfactory; (3) that, in spite

---

5. In plaintiff's proposed pretrial order, she elaborated on her legal theory, as follows:

   II. Legal Theories Plaintiff Intends to Relay [*sic*] Upon in Support of her Charges

   1. Defendant knew years in advance of the Plaintiff's medical condition but left me in a work environment where they stated that they knew I imposed a danger to myself and other employees.

   2. After the incident, a white males statement was readily believed other than of a black female in which I was sent home and Mr. Woods was returned to his job.

   3. An investigation was performed without the involvement of the Plaintiff or without any investigation of my medical condition at the time of the incident.

6. Although Witherspoon filed her complaint *pro se*, it appears that Kirk D. Crawley, Esq. aided her in preparing certain legal documents. The court file contains a letter from Crawley to counsel for Westinghouse dated April 7, 1992 in which Crawley states that he does not represent Witherspoon and forwards certain documents in his possession regarding this case.

7. Witherspoon has communicated with the Court through letters and a proposed pretrial order that she drafted. From these, the Court concluded that Witherspoon is an educated individual, fully capable of articulating her claim.

8. Witherspoon did file on December 23, 1992 a three-line document entitled "Motion to Proceed with Trial without an Attorney," in which she requested that a trial date be set.

of his qualifications and performance, he was fired; and (4) that the position remained open to similarly qualified applicants after his dismissal. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Holmes v. Bevilacqua*, 794 F.2d 142, 146 (4th Cir.1986) (en banc); *Smith v. Univ. of N.C.*, 632 F.2d 316, 332 (4th Cir.1980). Once this *prima facie* case is established, an inference of discrimination arises that may be rebutted by an employer on a showing of legitimate, nondiscriminatory reasons for the dismissal. *Smith, supra,* at 332–33. Once this showing is made, the burden of proof lies with the plaintiff to show, by a preponderance of the evidence, that the employer's proffered reasons for the dismissal are pretextual.

*Id.* at 455–56.

The plaintiff, who is an African–American female, is a member of a protected class. She fails, however, to show that her performance satisfied Westinghouse's expectations. In addition, her employer articulated a legitimate, nondiscriminatory reason (Witherspoon's assault on Wood) for terminating her. Witherspoon has not come forward with a scintilla of proof that tends to establish that the articulated reason for her discharge is pretextual. Her assault on Wood was serious and violent; he was fortunate to escape permanent injury to his eyes. The incident was thoroughly investigated by members of Westinghouse's personnel department; the investigators included a female and an African–American. They decided to terminate Witherspoon because of the attack which was a violation of company policy. There is no evidence from which a reasonable jury could conclude that Witherspoon's termination was influenced, in whole or in part, by Witherspoon's race or sex.

In her complaint, Witherspoon contends that the assault, which she claims not to recall, should be excused because she suffers from seizures and is, therefore, disabled. Such a claim, if actionable at all, is not actionable under Title VII.

CONCLUSION

Witherspoon is unable to establish a *prima facie* case of employment discrimination or to rebut Westinghouse's legitimate, nondiscriminatory reason for terminating her. Thus, judgment will be granted in favor of Westinghouse by separate Order.