**Cora U. RANSOME, Plaintiff,**

v.

**Garth BOWLING, Jr., et al., Defendants.**

**Civ. A. No. WN–91–2327.**

United States District Court,
D. Maryland.

May 3, 1993.

Cora U. Ransome, pro se.

Benjamin W. Hahn and Littler, Mendelson, Fastiff & Tichy, Baltimore City, MD, for defendants.

---

**ORDER**

NICKERSON, District Judge.

Pending before the Court are Petitioner's Objections to the Report and Recommendation of Magistrate Judge Daniel E. Klein (Paper No. 41), filed April 14, 1993.[1] Upon consideration of the Report and Recommendation (Paper No. 41) and objections thereto, and after a *de novo* review of the entire matter, IT IS this 3rd day of May, 1993, by the United States District Court for the District of Maryland, ORDERED:

1. That, pursuant to Fed.R.Civ.P. 72(b), the Report and Recommendation of Magistrate Judge Daniel E. Klein is hereby AFFIRMED and ADOPTED;

2. That Petitioner's Objections filed April 14, 1993, are OVERRULED;

3. That judgment BE and hereby IS GRANTED in favor of Defendants and against Plaintiff;

4. That the Clerk of the Court shall CLOSE this case.

**REPORT AND RECOMMENDATION**

KLEIN, United States Magistrate Judge.

This matter is before the Court on Defendants' Motion for Summary Judgment (Paper No. 33), Plaintiff's Motion for Summary Judgment (Paper No. 35), and Defendants' Consolidated Opposition and Reply thereto (Paper No. 36). The case has been referred to the undersigned for a report and recommendation pursuant to a January 7, 1992 Order of Judge Nickerson. Paper No. 9. No hearing is deemed necessary. Local Rule 105.6.

The *pro se* plaintiff makes a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging she was discriminated against on the basis of her race.[1]

---

1. Petitioner, appearing *pro se*, originally filed a notice of appeal (Paper No. 39), rather than objections to the report and recommendation. She later submitted objections in the proper format, and both documents were docketed by the Clerk's office as objections (Paper Nos. 39 & 41). Petitioner is advised that she must file another notice of appeal within the appropriate time period if she wishes to appeal this Order to the Fourth Circuit.

1. Initially, plaintiff filed a *pro se* complaint in this Court. Paper No. 1. She subsequently obtained counsel who filed an amended complaint. Paper No. 23. Plaintiff's counsel later withdrew their appearances on her behalf. Paper No. 26. Plaintiff now pleads in this Court *pro se*. For

Defendants move for summary judgment arguing that plaintiff has not made a prima facie case of race discrimination. It will be recommended that defendants' motion be granted.

## I. STATEMENT OF FACTS

Plaintiff, a black woman, was a tenured public school teacher employed by defendant Board of Education from December 1972 until she was discharged on June 7, 1990. Plaintiff taught English and language arts at the Piccowaxen Middle School in Newburg, Maryland, from the 1977–78 school year until her dismissal. Defendant Garth Bowling, Jr. was Piccowaxen's principal from the 1985–86 school year until July 1992. At the time of plaintiff's discharge, approximately 20% of the students at Piccowaxen were black and 20% of the teachers in the school district were black. Paper No. 33, Exhs. 2 (Maryland State Board of Education statistics), 3 (Bowling affidavit), 4 (Form EEO–5).

In summary, performance evaluations in 1977, 1981, and 1983 showed plaintiff needed improvement in "teaching power" and being on time for work. See id., Exhs. 6, 8, 9 (performance evaluations).[2] In 1984, plaintiff was cited for excessive tardiness and was rated unsatisfactorily in her overall evaluation and in teaching power and executive ability. See id., Exhs. 10–14.[3] Plaintiff's performance improved in 1985. Id., Exh. 15. From the 1985–86 school year onward, plaintiff's evaluators were Bowling, the new principal, and Evelyn Winfield, the new supervisor of language arts. In May 1987, plaintiff was evaluated unsatisfactorily in executive ability and satisfactorily overall. Id., Exh. 16 (performance evaluation). After observations of plaintiff's classes in October and November 1987 and February and April 1988, plaintiff's evaluators noted she was having problems with giving adequate instructions and teaching actively. Id., Exhs. 17, 18, 24, 25 (reports of teaching observations). In December 1987 and January 1988, Bowling received two parent complaints and one student complaint about plaintiff. Id., Exhs. 20, 21, 23. In April 1988, Bowling discussed with plaintiff repeated student complaints about discipline problems in plaintiff's classes and a parent complaint about discipline and that the parent's child was not being sufficiently challenged in class. Id., Exhs. 25, 26. In April and May 1988, Bowling received a parent complaint about plaintiff's alleged "ineffectiveness" as a teacher and a complaint from the school librarian about plaintiff's sending students to the library. Id., Exhs. 27, 28. Plaintiff requested a transfer out of Piccowaxen in May 1988 which was denied because she currently had an unsatisfactory rating on her teaching evaluation. Id., Exhs. 29, 30.[4] Plaintiff was rated unsatisfactorily in executive ability in June 1988 and Bowling expressed "serious concerns" regarding teaching power and a need for improvement in other areas. Paper No. 33, Exh. 31. Plaintiff did show improvement in October, November, and December 1988 and received all satisfactory markings. Id., Exhs. 33–36, 39 (reports of teaching observations and evaluation). Plaintiff was next observed and evaluated in May 1989. She was rated unsatisfactorily in executive ability and satisfactorily overall. Id., Exh. 38. She was having trouble with discipline, class management, teaching power, and did not sustain improvements made in the first semester of the year. Id., Exhs. 37–39. In June 1989, Bowling and Winfield notified the assistant superintendent

---

that reason, it is recommended that her Motion for Summary Judgment also be construed as an opposition to defendants' Motion to Summary Judgment. In substance, plaintiff's pleading responds to the issues raised in defendants' motion and raises no new issues of its own.

2. In 1979, plaintiff had shown improvement in executive ability and teaching power. Id., Exhibit 7 (performance evaluation).

3. Plaintiff characterized the principal's concerns about her tardiness as "harassment" for being "an independent thinker." Id., Exhibit 11.

At the time period in question, teachers were rated "unsatisfactory," "satisfactory," or "excels" in scholarship, executive ability, personality, teaching power, professional responsibility, and overall.

4. Plaintiff asserts that after Bowling became aware of her transfer request "he accelerated his harassment tactics." Paper No. 35, at 4. She does not specifically state how that was achieved.

that plaintiff seemed "to be caught up in a cycle of improvement and regression." *Id.*, Exh. 39. If plaintiff did not significantly improve, they reported, she would be rated unsatisfactory overall and they would recommend her dismissal. *Id.*[5]

Despite efforts by Bowling and Winfield, plaintiff's performance did not improve in the fall semester of 1989. *See id.*, Exhs. 43 (memorandum of conference), 44–45 (reports of teaching observations).[6] Within one month, plaintiff failed to attend two parent-teacher conferences, a faculty meeting, a scheduled meeting with Bowling and Winfield, and a parent complaint was received about plaintiff's conduct toward one of her students. *Id.*, Exhs. 47, 49, 51–53.[7] Plaintiff was observed and evaluated by Bowling and Winfield in December 1989. Paper No. 33, Exhs. 54, 55. She was rated unsatisfactorily overall and also in teaching power and executive ability. *Id.*, Exhs. 55 (teaching evaluation), 56 (plaintiff letter), 59 (memorandum). Four different parents made five complaints about plaintiff's teaching and conduct in December 1989 and January 1990. *Id.*, Exhs. 57, 60–62, 66.

In the spring semester of 1990, Bowling received numerous complaints about plaintiff from parents, students, and other teachers.

Bowling observed plaintiff's class on February 15, 1990 and noted her problems in keeping control of her students. *Id.*, Exhs. 68, 69. In late February 1990, three different teachers made five complaints about loud disruptions of their classes from plaintiff's classroom. *Id.*, Exhs. 70–72. Parent complaints echoed the same concerns about discipline, as did several student complaints, including a five page document presented to Bowling—purportedly "from the whole class"—detailing their dissatisfaction with plaintiff. *Id.*, Exhs. 73, 77–82; *see also* Exhs. 83, 87, 93, 97, 98.[8] Plaintiff's classes were unfavorably observed several more times during the balance of the semester. *Id.*, Exhs. 75, 84, 89, 91 (reports of teaching observations).[9] On April 4, 1990, plaintiff was evaluated for the last time by Bowling and Winfield. Her evaluation was the same as that of the preceding semester: she was rated unsatisfactorily overall and also in teaching power and executive ability. Paper No. 33, Exh. 94.[10] As a result, Bowling recommended to the assistant superintendent, who concurred, that plaintiff be dismissed. Paper No. 33, Exhs. 95, 99. The superintendent, in turn, recommended to the Board that plaintiff be dismissed on grounds of incompetency. *Id.*, Exh. 101. A hearing examiner affirmed the superintendent's rec-

---

5. At this point, the Board's administrators decided to allow plaintiff a year's time to improve. Apparently, plaintiff's teaching certification could have been downgraded instead, which would have had other adverse ramifications. *See id.* at 13, 41, Exh. 99.

6. At the beginning of the semester, one of plaintiff's teaching colleagues wrote Bowling asking that her child not be placed in plaintiff's classes. *Id.*, Exhibit 42.

7. Plaintiff denies being notified of two of the meetings. Later, she complained to Bowling that the number of meetings scheduled was encroaching on her class preparation time. *See id.*, Exhibits 56, 58. Bowling reprimanded plaintiff for missing the meeting with him. Plaintiff then filed a grievance against Bowling which was denied. Paper No. 35 (Administrator's Decision on Grievance dated February 9, 1990).

8. Nevertheless, plaintiff wrote in an April 4, 1990 letter to Bowling that "[i]n spite of . . . efforts to discredit me, I have still maintained the respect of my students, my colleagues, and the parents." *Id.*, Exhibit 96.

9. Plaintiff contested these observations. *Id.*, Exhibits 76, 85, 90, 92. She also filed a grievance against Bowling and Winfield about one of the observations. Paper No. 35 (undated complaint). Bowling, the reviewing administrator, denied the grievance. Paper No. 36 (Administrator's Decision on Grievance dated May 4, 1990).

10. Plaintiff contested the evaluation. In a letter to Bowling, plaintiff stated that it was "clear" to her that "this is racial harassment." *Id.*, Exhibit 96. She alleged that her classroom was taken from her and given to a white teacher with less seniority. *Id.* Bowling avers that he reassigned plaintiff to an open classroom setting to allow the newer teacher to become acclimated in an enclosed classroom, a more familiar environment for the newer teacher. Paper No. 36, Exhibit 104, at 2.

   Plaintiff has submitted an unsigned, undated grievance form claiming that her unsatisfactory April 1990 evaluation was a reprisal for an earlier grievance. Paper No. 35 (attachment). The Court cannot determine if the grievance was ever filed or acted upon.

ommendation. *Id.,* Exh. 102. On appeal to an administrative law judge who conducted a full adversarial trial-type hearing, plaintiff was found *de novo* to be incompetent. *Id.,* Exh. 103; *see id.* at 40. The Maryland State Board of Education adopted that finding and affirmed the defendant Board's decision to discharge plaintiff. *Id.,* Exh. 103. Plaintiff did not appeal that decision in the Maryland courts, rendering the decision final. *Id.* at 29. Plaintiff filed a charge of employment discrimination with the EEOC in April 1990 and a right to sue letter was issued on May 30, 1991. Paper No. 1 (attachments).[11]

In an affidavit, Bowling avers that in his career he has rated four teachers unsatisfactorily: two were white females, one was a white male, and one was a black male. Paper No. 33, Exh. 3, at 2. Bowling also states that during the 1990–91 school year he gave each of the five black teachers at Piccowaxen "excellent" ratings, including one overall "excellent" rating. *Id.* None of those five teachers received an "unsatisfactory" rating from him. *Id.* Prior to that time, there were three black teachers at Piccowaxen whom Bowling had rated "excellent," including two who were so rated overall. *Id.* None of those three teachers received an "unsatisfactory" rating from him. *Id.*

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party initially bears the burden of proof and all documentary materials must be assessed in the light most favorable to the nonmoving party (here, the plaintiff). *Pulliam Invest. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987). While the nonmoving party is entitled to all inferences in her favor, those inferences must be justifiable inferences from the evidence. *Anderson v. Liberty 'Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Because plaintiff bears the burden of

proving her claims at trial in the instant case, it is her responsibility to confront defendants' motion and attached affidavits and exhibits with counter affidavits or other similar evidence. *Atkinson v. Bass,* 579 F.2d 865, 866 (4th Cir.), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 615, 58 L.Ed.2d 679 (1978). The nonmoving party must go beyond her pleadings and by her own affidavits or by depositions, answers to interrogatories or admissions on file designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). There is a "genuine" dispute if the evidence creates "fair doubt; wholly speculative assertions will not suffice." *Id.* Further, the entry of summary judgment is mandated by Rule 56(c) if, after adequate time for discovery and upon motion, the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

### B. Title VII

■ In the absence of direct or circumstantial evidence of race discrimination, plaintiff may invoke the judicially created method of proof established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. Specifically, to make out a prima facie case of discrimination, plaintiff must establish that:

(1) she is a member of a protected class;

(2) she was qualified for her job and that her job performance was satisfactory;

(3) in spite of her qualifications and performance, she was fired; and

(4) the position remained open to similarly qualified applicants after her dismissal.

*Williams v. Cerberonics, Inc.,* 871 F.2d 452, 455 (4th Cir.1989); *Holmes v. Bevilacqua,* 794 F.2d 142, 146 (4th Cir.1986) (*en banc* );

---

**11.** No administrative determination by the EEOC is in the record. The instant lawsuit was timely filed in this Court.

*Baltazar v. Board of Educ. of Cecil County,* 52 Fair Empl.Prac.Cas. (BNA) 1877, 1879, 1990 WL 71381 (D.Md.1990).

■ Once a prima facie case is established, an inference of discrimination arises which may be rebutted by a showing of defendant's legitimate, non-discriminatory reasons for the dismissal. *Williams v. Cerberonics, Inc.,* 871 F.2d at 456. Once that showing is made, plaintiff bears the burden of proving, by a preponderance of the evidence, that defendant's proffered reasons are pretextual. *Id.*

## III. ANALYSIS

■ There is no direct or circumstantial evidence of race discrimination in this case. In her amended complaint, plaintiff alleges personal, racial animus on the part of Bowling. There is nothing in the record supporting those allegations.[12] To withstand summary judgment, plaintiff must then satisfy the *McDonnell Douglas* method of proof. A review of the record shows that she cannot.

■ It is undisputed that plaintiff is a member of a protected class and that she was discharged. Plaintiff has failed, however, to show satisfactory job performance. Defendants have submitted abundant documentation that plaintiff's performance was subpar over a period of years. Indeed, it is clear that plaintiff's performance went on a downward spiral from the spring semester of 1989 until she was fired. The record is replete with unfavorable teaching observations and evaluations, and the complaints of parents, students, and teachers. While not dispositive in this Court, both the defendant Board and the State Board of Education have adjudged plaintiff an incompetent teacher.

Plaintiff has come forward with no probative evidence of satisfactory performance.

*See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 ("[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted"). Her prior performance evaluations are of little consequence. "Previous satisfactory job performance cannot be used by an employee to insulate [herself] from dismissal once performance becomes unacceptable." *Baltazar v. Board of Educ. of Cecil County,* 52 Fair Empl.Prac.Cas. at 1880, 1990 WL 71381 at *3; *Harriot v. Barnard College,* 56 Fair Empl.Prac.Cas. (BNA) 960, 963, 1991 WL 135625 (S.D.N.Y.1991). Although plaintiff is entitled to all justifiable evidentiary inferences, nothing can be inferred from the standardized test scores of her fall 1990 class. Such test scores are not reflected in teaching evaluations and, if they were, the scores would reflect teaching in the prior school year. *See* Paper No. 36, Exh. 104, at 1–2 (Bowling affidavit). Plaintiff has contested a number of exhibits submitted by defendants for such reasons as: her responses to them were not included; she believes her comments were misrepresented, or she never received internal school memoranda. None of these unsupported assertions raise genuine issues of material fact. The significance of many of defendants' supporting documents is that they exist. Plaintiff would not have received complaints addressed to Bowling or internal school memoranda. They are probative in and of themselves. Moreover, defendants have no obligation to make plaintiff's case for her. Her assertions that her performance was satisfactory, like her assertions of racial animus, have not been affirmatively shown. Thus, the Court has an obligation to prevent "factually unsupported claims and defenses" from proceeding to trial. *Felty v. Graves–Humphreys Co.,* 818 F.2d at 1128 (citation omitted).[13] It is rec-

---

**12.** Unsupported speculation cannot defeat a summary judgment motion. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987); *Ash v. United Parcel Service, Inc.,* 800 F.2d 409, 411–12 (4th Cir.1986); *Ross v. Communications Satellite Corp.,* 759 F.2d at 364.

Plaintiff refers to Bowling's membership in the "Sons of Confederate War Veterans" and an occasion when he wore a confederate uniform to school as evidence of discrimination. The Court is sensitive to feelings evoked by the Civil War

and that period of American history. It is basic civics, however, that membership in such groups is activity protected by the First Amendment to the U.S. Constitution. The record reveals no evidence of racial comments directed toward plaintiff at any time.

**13.** Even if plaintiff had made out a prima facie case, summary judgment would still be appropriate. Defendants have shown plaintiff's incompetence was the legitimate, non-discriminatory

**210**

ommended that summary judgment be granted in favor of defendants as plaintiff has not made out her prima facie case.[14]

### IV. CONCLUSION

Accordingly, for the foregoing reasons, it is recommended that upon the expiration of time for taking exception to this report:

1. That Plaintiff's Motion for Summary Judgment also be construed as an Opposition to Defendants' Motion for Summary Judgment;

2. That Plaintiff's Motion for Summary Judgment be denied; and

3. That Defendants' Motion for Summary Judgment be granted.

March 10, 1993.

reason for her discharge. Plaintiff has not adequately shown that that reason was pretextual. Moreover, construing the complaint liberally to state a claim for retaliation on the basis of grievances filed by plaintiff, summary judgment is appropriate. *See Ross v. Communications Satellite Corp.*, 759 F.2d at 365 (stating standard for retaliation cases); *Smith v. Denver Public Sch. Bd.*, 767 F.Supp. 226, 230 (D.Colo.1991) (impartial administrative law judge's finding of teacher incompetence breaks any causal connection of retaliation between board of education and teacher).

14. In light of the recommended disposition of the case, it is unnecessary to discuss defendants' argument that the claim for reinstatement should be dismissed.