**Sallie M. BOGGAN, Plaintiff,**

v.

**BELLSOUTH TELECOMMUNICATIONS, INC., Defendant.**

**No. 3:98CV198.**

United States District Court, W.D. North Carolina, Charlotte Division.

Feb. 18, 2000.

546

W. Terry Sherrill, Melvin L. Wall, Jr., Charlotte, NC, for plaintiff.

Leon H. Lee, Jr., Atlanta, GA, for defendant.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendant's motion for summary judgment which is opposed by the Plaintiff.

For the reasons stated herein, the Defendant's motion is granted and this action is dismissed.

## I. PROCEDURAL HISTORY

Plaintiff brought this *pro se* action in May 1998 alleging she had been the victim of racial and sexual discrimination during her employment with the Defendant. Her claims include allegations that she was not promoted and was denied equal pay for equal work; after filing a complaint with the Equal Employment Opportunity Commission (EEOC), she was harassed; and white male employees received preferential treatment. Defendant filed a motion for summary judgment on August 31, 1999; and on January 5, 2000, the Court issued to Plaintiff a *Roseboro*[1] Order. In that same month, Plaintiff retained counsel who appeared and filed responses to the motion on her behalf. The matter is therefore ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue of material fact and judgment for the moving party is warranted as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party, here the Plaintiff. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Defendant as the moving party has the initial burden to show a lack of evidence to support Plaintiff's case. *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If this showing is made, the burden then shifts to the Plaintiff who must convince the Court that a triable issue does exist. *Id.* Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]." *Id.* A "mere scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* Moreover, in considering the facts of the case for purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the Plaintiff, as the nonmoving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. STATEMENT OF FACTS

Plaintiff, an African American woman, has been employed by BellSouth since June 1968. EEOC Complaint, *attached to* Complaint. In 1978, she was promoted from her position as an operator to that of computer attendant. *Id.* She later received another promotion to line translation specialist and has remained in this position since 1985. *Id;* Exhibit 3, Affidavit of Wendy McPherson, *attached to* Defendant's Motion for Summary Judgment [Defendant's Motion].

Plaintiff testified during a deposition to specific instances of discriminatory treatment. On one occasion Plaintiff failed to receive overtime compensation although a fellow employee received the same. Exhibit 1, Deposition of Sallie M. Boggan, *attached to* Defendant's Motion, at 50. Plaintiff filed a grievance through her union and ultimately received overtime pay for two of the five days. *Id.* Despite representation through her union, it was determined that only two of those days qualified for overtime compensation. *Id.*

In 1995, the position of electronic technician screener was created, a position similar to that of electronic technician except these employees worked exclusively on customer problems. Plaintiff's Deposition, at 65. Company policy mandates that an employee may not be considered for this position unless they have passed the General Qualifications Test, Level II(GQT), basic electricity, basic electronics, computer fundamentals and digital electronics. Exhibit 2, Affidavit of Tracy Chastain, *attached to* Defendant's Motion. Although

1. *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975).

Plaintiff had passed the GQT, she was never able to pass all of the other four tests. *Id.;* Plaintiff's Deposition, at 65. Plaintiff last took the tests in May 1997 and thereafter declined to take them although she acknowledges she was offered the opportunity to do so. *Id.,* at 66; Chastain Affidavit. After she took the test in 1992, she received information from the Defendant concerning her scores and what steps she needed to take in order to achieve passing levels. Digital Cable Technologies Mini–Course Feedback Information, dated October 1, 1992, *attached to* Complaint.

Plaintiff later learned from Reva Brown, a Caucasian woman, that an employee could become an electronic technician through on-the-job training. Plaintiff's Deposition, at 71–72. This upset Plaintiff because she had trained Brown in her first job with BellSouth. *Id.* Brown was working in Charlotte during that time although her husband and children remained in her hometown of Asheville. *Id.* Brown was excited because this would allow her to transfer back to Asheville. *Id.* Plaintiff testified that Brown told her Brown had never been able to pass the tests. *Id.* Tracy Chastain is the supervisor responsible for promoting line translation specialists to electronic technicians. Chastain Affidavit. She averred that no employee is considered for the position unless all the tests have been passed and that Brown was test qualified. *Id.* In a letter responding to Plaintiff's EEOC complaint, a company representative acknowledged that incumbents may be considered qualified for a position if they are exempted from taking the test based on their experience or previous training. Attachment K, Letter dated October 7, 1977, responding to EEOC charge, *attached to* Plaintiff's "Information to be Added to the File in support of the Allege Charge," filed November 13, 1998.

Debbie Wilkinson, a Caucasian woman, worked in a different group than Plaintiff as a network translation assistant. Plaintiff's Deposition, at 88. Plaintiff testified she had been told Wilkinson was promoted without passing the required tests. *Id.* Chastain averred that Wilkinson had become test qualified in 1982. Chastain Affidavit.

Vince Hill, an African American man, was Plaintiff's immediate supervisor until 1997. Plaintiff's Deposition, at 98. During his tenure, Marsha Ford was allowed to go to school with electronic technicians although she had not yet passed the tests required for that position. *Id.,* at 97. As a result of this education, Ford was promoted to electronic technician. *Id.,* at 97–99. Plaintiff felt she should have been given the same opportunity.

Greg Horton, a Caucasian male, worked in the same department with Plaintiff performing the same job. *Id.,* at 80–81. Plaintiff testified that although she had no proof, it was her belief that he was paid more than other employees, including her.[2] *Id.* She said that a manager had told her this but refused to disclose the identity of that person. *Id.* Moreover, Horton was promoted from a part-time employee to the full-time position of line translation specialist instead of three African American women who had more experience. *Id.,* at 84. Two of those women, Denise Patterson and Heidi Newber, had even more experience than Plaintiff. *Id.* The third, Jackie Banks, had been with the company for five years. *Id.* In addition, a Caucasian woman, Wanda Littaker, was promoted after only two months on the job. *Id.* Plaintiff acknowledged she did not know if the unpromoted women had disciplinary problems which might have impacted their promotions. *Id.,* at 85. Wendy McPherson, the Area Manager, averred that these women had such problems and thus did not receive promotions. McPherson Affidavit. After McPherson became the Area

---

2. During her deposition, Plaintiff was unable to state whether he received more pay because he worked on Sundays which qualified him for a higher rate.

Manager, she terminated an African American woman with 17 years seniority. Plaintiff's Deposition, at 85. That woman, who had a college degree, held one of the lowest paid positions and the termination was due to surplusage. *Id.*

At her deposition, Plaintiff testified that on one occasion a manager made a derogatory statement about African Americans. *Id.*, at 93. Plaintiff refused to identify the person making the statement but acknowledged that on no other occasion had a manager made such a comment to her. *Id.* However, several comments were made to her by unidentified persons concerning McPherson's elimination of African Americans from their particular work group. *Id.* No mention was made of these experiences in Plaintiff's EEOC complaint. During her tenure with BellSouth, Plaintiff has not heard racial slurs in the work place and has not heard derogatory statements about women. *Id.*, at 96.[3]

In early 1998 Plaintiff was on disability leave for over one month due to carpal tunnel syndrome. Letter to North Carolina Department of Insurance, dated February 18, 1998, *attached to* Complaint. She had some difficulties with her workers' compensation claim and the number of hours she was to work on her return. *Id.* Through her union representative, she was able to get these matters resolved. Plaintiff's Deposition, at 100. Documents attached to Plaintiff's complaint show that she continued to have problems resulting in less than full-time work and additional medical leaves through the spring of 1998.

Plaintiff's service records show that during her employment with Defendant, she has had a maternity leave and more than one leave of absences. Service Records, *attached to* Plaintiff's *pro se* response. At the time of the Defendant's motion for summary judgment in August 1999, Plaintiff was on leave from work receiving short term disability benefits. McPherson Affidavit. She became eligible for retirement in November 1999. *Id.* According to a physician's note attached to Plaintiff's *pro se* response, she began treatment for depression in March 1999 and remained in treatment in November 1999. The treating doctor opined that her depression had interfered with Plaintiff's ability to concentrate and her memory. Document 1, *attached to* Plaintiff's *pro se* response.

Document 7 attached to Plaintiff's *pro se* response to the Defendant's motion is the promotion data for the non-management employees of Plaintiff's work group (the Recent Change Memory Administration Group) for the period from July 1994 through December 1998. That document shows that of the 30 employees in that group, 50 percent of those receiving promotions were of an ethnic minority, 14 African Americans and one Hispanic. *Id.* Four of the five employees promoted to the position of electronic technician during this time was Caucasian.[4] *Id.* However, Plaintiff's work group is part of a larger department known as The Network Infrastructure Support Center. McPherson Affidavit. During the time period from August 1996 through August 1999, three African American employees were test qualified and promoted to electronic technician positions. *Id.*

## IV. DISCUSSION

In order to state a *prima facie* case of discrimination as a result of failure to promote, Plaintiff must prove by a preponderance of the evidence (1) she is a member of a protected class; (2) her employer had an open position for which she applied; (3) she was qualified for the position; and (4) she was rejected for the

---

3. This page of the transcript is attached to the Plaintiff's *pro se* response to the motion for summary judgment.

4. One of those individuals is identified as belonging to a ethnic group identified as "8", but no explanation of that designation was given. Therefore, this individual could have been a minority such as Native American or Asian.

position under circumstances giving rise to an inference of unlawful discrimination. *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 230 (4th Cir.1999), *petition for cert. filed*, Dec. 27, 1999. Moreover, "[i]n a failure to promote case, the plaintiff must establish that she was the better qualified candidate for the position sought." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir.1996). Plaintiff clearly is a member of a protected class who applied for the position of electronic technician. However, the remainder of her evidence falls far short of establishing a *prime facie* case.

 Plaintiff readily acknowledges that she never passed all of the tests which would entitle her for consideration for a promotion. Thus, she was not qualified for consideration. Moreover, assuming *arguendo* that she had been qualified for consideration, she has brought no evidence forward showing she was the superior candidate for the position sought. *Id.* Even more damaging to her position is the fact that she did not take the tests after May 1997. And, after she learned that Brown and Ford became eligible for consideration by on-the-job training and additional education, she did not ask for the same treatment. In fact, each of the individuals in Plaintiff's work group who were promoted to the position of electronic technician were promoted in 1995, well before the last date when she took the tests. *See* Document 7. Plaintiff does not allege that she decided not to take the tests due to Defendant's discriminatory practices. *Brown v. McLean*, 159 F.3d 898, 903 (4th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1577, 143 L.Ed.2d 672 (1999). Indeed, she admits that she declined to do so because of her sister's illness. Likewise, Plaintiff does not allege she did not request on-the-job training or additional education due to Defendant's discriminatory practices. *Id.*

In fact, she testified that she complained to her union representative when Brown received on-the-job training and the representative acknowledged the company's policy of allowing the same. However, Plaintiff does not claim, much less bring forth any evidence, that she sought and was denied the same treatment. *Id.*

 Moreover, Plaintiff's allegations that Brown, Wilkinson and Ford received favorable treatment because they were Caucasian are based on hearsay, speculation or a combination of both; and as such, are inadmissible to refute a motion for summary judgment. *Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir.1995); *Evans*, 80 F.3d at 960. Plaintiff testified that Reva Brown told her of her good-fortune which would allow her to be transferred back to Asheville to live with her family.[5] There is no affidavit from Brown and she was not deposed. Plaintiff admitted that she "had been told" of Wilkinson's promotion without passing the tests. Again, there is no affidavit from Wilkinson and she was not deposed. The same is true for Ford. "While a Title VII plaintiff may present direct or indirect evidence to support her claim of discrimination, unsupported speculation is insufficient. [Plaintiff's] unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers fail to disprove [Defendant's] explanation or show discrimination." *Id.* (citations omitted).

As to Greg Horton's special treatment, Plaintiff testified that she "had no proof" but she "believed" he made more money than she for the same work. *Id.* Her claims that he was made a full-time employee over three African American women are refuted by Defendant's explanation that none of these women were qualified

---

5. In fact, Plaintiff's testimony tends to show that Brown had a special situation which the company accommodated and which resulted in her transfer out of Plaintiff's group. Moreover, Brown was the employee designated as ethnic origin "8." Thus, it is not shown that she was in fact Caucasian. Plaintiff herself refers to Brown as a minority in one of her *pro se* pleadings.

for consideration due to disciplinary problems. Her allegations that McPherson wanted to eliminate African Americans in the group are likewise based on raw speculation since Plaintiff testified she had heard "comments" to that effect. *Id.* As to the racial slur, Plaintiff refused to identify the individual who purportedly told her and thus, this is also inadmissible hearsay. *Greensboro Prof'l Fire Fighters Ass'n, supra.* And, she testified that she had never had a racial or sexual slur delivered directly to her.

> Fatal to [Plaintiff's] discrimina[tion] claim is her failure to meet the [third and fourth] elements of a *prima facie* case. The only evidence offered by [Plaintiff] in support of th[ese] elements was [ ] her own testimony repeating statements by unidentified [persons].... [Plaintiff's] testimony merely repeating hearsay statements made by *unidentified* [persons] indicating that *unidentified* [individuals] were [engaging in discriminatory conduct] is too vague for a reasonable jury to find [Plaintiff] established elements [three and four] of a *prima facie* case by a preponderance of the evidence.

*Taylor,* 193 F.3d at 234.

In contrast, the evidence adduced during discovery shows that during the time at issue, 50 percent of the employees promoted were African American or Hispanic. And, of the eight employees promoted to the position of electronic technician in The Network Infrastructure Support Center, three were African American, four were Caucasian and the remaining employee's race is unclear from the record.

In essence, Plaintiff's "allegations find no factual support whatsoever in the record, save Plaintiff's own conjecture and speculation. In fact, the record demonstrates that ample training [and benefits were] made available to Plaintiff—at [Defendant's] expense, no less—and Plaintiff has proffered no evidence that somehow [on-the-job] training was singularly withheld. Mere speculation and conjecture are

wholly inadequate to support a claim of intentional discrimination." *Barber v. City of Conover,* 73 F.Supp.2d 576, 587 (W.D.N.C.1999) (footnote omitted).

As to Plaintiff's claims of retaliation after she filed an EEOC complaint, her deposition testimony established that her complaints concerning overtime pay, disability benefits and shortened hours were resolved.

Moreover, assuming *arguendo* that Plaintiff had made out a *prima facie* case, she still would not prevail past summary judgment. Once a *prima facie* case is stated,

> "the burden of production shifts to the employer 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Once [Defendant] meets its burden of production, [Plaintiff] "must bear the burden of proving that [s]he was the victim of intentional discrimination. [S]he can do this by demonstrating that [Defendant's] proffered reason was a mere pretext and that, as between [her] [race and gender] and [Defendant's] explanation, [race and gender were] the more likely reason[s] for the [failure to promote]."

*Vaughan v. The MetraHealth Companies, Inc.,* 145 F.3d 197, 200 (4th Cir.1998) (quoting *O'Connor v. Consolidated Coin Caterers,* 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973))). Moreover, when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e); *Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir.1993).

■ Defendant has stated that Plaintiff was unqualified for the promotion because she never passed the tests which would preliminarily make her eligible for consideration.

> [In order] to survive a motion for summary judgment ... the plaintiff must do more than merely raise a jury question about the veracity of the employer's proffered justification. The plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action. [A]n employer is entitled to summary judgment unless the [Title VII] plaintiff has adduced sufficient evidence *"both* that the reason was false, *and* that [ ] discrimination was the real reason." This approach, dubbed "pretext-plus," is a better approach than "pretext only." Pretext-plus best preserves the character of statutes like the [Title VII] as antidiscrimination statutes. [Title VII] "does not award damages against employers who cannot prove a nondiscriminatory reason for adverse employment action, but only against employers who are proven to have taken adverse employment action by reason of [race or gender]." Of course, the simple fact "[t]hat the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of [race or gender] is correct." "[N]othing in law would permit [a court] to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable."

*Vaughan,* 145 F.3d at 202 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 523–24, 514–15, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)) (footnote omitted). This is precisely the case at hand. For all the reasons set forth above, the undersigned finds that Plaintiff has failed to bring forth any admissible evidence that the Defendant's reasons for not promoting her are pretextual.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for summary judgment is hereby **GRANTED.**

A Judgment dismissing this action in its entirety is filed herewith.