Priscilla **JOHNSON**, Plaintiff,

v.

**CITY OF CHARLOTTE**, Defendant.

No. 3:01CV477–MCK.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Oct. 2, 2002.

Tamara W. Brooks, Charlotte, NC, for plaintiff.

Hope Root, Richard Harcourt Fulton, Office of City Atty., Charlotte, NC, for defendant.

## ORDER

McKNIGHT, United States Magistrate Judge.

**THIS MATTER IS BEFORE THE COURT** with consent of the parties on Defendant's motion for summary judgment (doc. 10). For the following reasons, the undersigned concludes that the motion should be denied.

### I. Factual and procedural background

Plaintiff, Priscilla Johnson, ("Plaintiff") filed this suit against her employer, the Charlotte Fire Department for the City of Charlotte ("Defendant"). Plaintiff alleges

that Defendant discriminated against her on the basis of race and gender in violation of Title VII of Civil Rights Act of 1964. Plaintiff initially alleged further claims of negligent supervision, hostile environment, and emotional distress, but indicates in her brief that she is no longer pursuing those claims.

Plaintiff joined the Charlotte Fire Department in 1988 as a Firefighter I. She was promoted to Firefighter II and in 1998, became eligible for promotion to Fire Captain. Plaintiff was the first black female in the history of the Fire Department to become eligible for this position.

The Fire Department's promotion procedure is as follows. The Department sends out an announcement at the beginning of each year which sets out the eligibility requirements. Firefighters must meet the eligibility requirements each year to be eligible for promotion that year. To be eligible, firefighters must have five years of service at certain positions and acceptable performance appraisal and physical fitness ratings. If they meet these requirements, they can participate in written examinations and assessment exercises. If they achieve a certain score on these tests, they go into an eligibility pool. They are then ranked by scores composed of their test and assessment scores plus "Relevant Factor" scores which add points for seniority, service as an engineer, exceptional performance ratings, and education. Where scores are identical, the candidates are listed in order of hire date, i.e., the first hired appears ahead of the next hired even if they have the same score. In practice, promotions have been made sequentially down the list as they become available. Where candidates have had tied rank scores, the first candidate on the list

(the first hired) was promoted before the others with the same score. The Fire Chief, Luther Fincher, determines who is promoted to Fire Captain.

In June of 1999, a Fire Captain's position became available. At that time, Plaintiff's name was next on the list to be promoted. Plaintiff and two other Firefighters, John Keffer and Robert Forcier [1], all had scores of 158. Plaintiff's name appeared before the others on the promotions list because she was hired first. Had the Fire Department followed its practice of promoting sequentially down the list, Plaintiff would have been promoted. Instead, Chief Fincher promoted John Keffer, a white male, on June 30, 1999. Keffer was the last person promoted for that year because the eligibility list expired on June 30, 1999.

Plaintiff filed a Grievance with the City's Human Resources Department shortly thereafter on July 28, 1999. The hearing officer, an assistant City Manager, dismissed the grievance. Plaintiff then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). After investigation, the EEOC determined that it was reasonable to conclude that discrimination occurred and attempted conciliation to resolve the issue. When conciliation failed, the EEOC referred Plaintiff's case to the Department of Justice. The Department of Justice declined to sue on Plaintiff's behalf and issued her a right to sue letter. Plaintiff then filed the instant suit.

## II. Analysis

Defendant moves for summary judgment, arguing that Plaintiff cannot make out a *prima facie* case; that Defendant

---

1. Firefighter Forcier was not considered for promotion because he had been assigned to

light duty due to a terminal illness.

had a legitimate non-discriminatory reason for not promoting her; and that Plaintiff cannot show that Defendant's proffered reason was a pretext for discrimination.

### 1. Summary judgment standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant has "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes will demonstrate the absence of any genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Further, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Rule 56(e)).

Further, in opposing summary judgment, nonmovants must do more than present a mere scintilla of evidence in their favor. They must present sufficient evidence that reasonable jurors could find for them by a preponderance of the evidence. An apparent dispute is "genuine" only if "the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find in [the non-movant's] favor." *Sylvia Dev. Corp. v. Calvert County, Md.,* 48 F.3d 810, 818 (4th Cir. 1995) (internal quotation marks and citation omitted).

Further, the United States Supreme Court has established a three-step proce-dure for proving discrimination under Title VII. First, the plaintiff bears the burden of establishing a *prima facie* case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. Once the employer produces evidence of a non-discriminatory reason for the employment decision, the plaintiff must prove by a preponderance of the evidence that the articulated reason is a pretext for unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### 2. *Prima facie* case

 To establish a *prima facie* case for discriminatory failure to promote, Plaintiff must show that (1) she is a member of a protected class; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of discrimination. *Carter v. Ball,* 33 F.3d 450 (4th Cir.1994).

Defendant concedes that Plaintiff can show the first three elements, but argues that Plaintiff cannot satisfy the fourth element of this test: that she was rejected for the position under circumstances giving rise to an inference of discrimination. Defendant avers that the promotional eligibility list was expiring for the year at the time Plaintiff was rejected, and only one position was open, which meant that only one of the candidates could be promoted for the remainder of that eligibility year. The other candidate would have to wait until the next eligibility period. Defendant avers that this was the first time there

were candidates with tied scores and only one open position. Defendant contends that Plaintiff cannot show that another candidate was in her position and was treated differently than she was. Defendant, citing *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124 (4th Cir.2002), thus argues that because Plaintiff cannot show that she was treated differently under "similar circumstances," she cannot make out a *prima facie* case of discrimination.

Defendant's argument is unpersuasive. *Bryant* set out the *prima facie* requirements for disparate treatment in a disciplinary measure case, a standard which has no application here. The failure to promote standard is articulated in *Carter v. Ball, supra*, and no court has suggested that *Bryant* be applied instead of *Carter* in failure to promote cases.

■ Next, Defendant argues that in addition to the four elements noted above, as part of Plaintiff's *prima facie* case, Plaintiff must also show that she was the better qualified candidate, citing *Boggan v. BellSouth Telecommunications, Inc.* 86 F.Supp.2d 545 (W.D.N.C.2000). This argument is unpersuasive for the following reasons.

■ *Boggan* relies on the Fourth Circuit's decision in *Evans v. Technologies Applications*, 80 F.3d 954 (4th Cir.1996), in requiring a plaintiff to show better qualifications as part of her *prima facie* case.

However, *Evans* does not require this showing at the *prima facie* stage. After plaintiff makes her *prima facie* showing, which the court characterizes as a "relatively easy task," *Evans*, 80 F.3d at 959, *Evans* requires a plaintiff to make a showing of better qualifications when meeting her burden to show pretext.[2] *Evans* cites the four-pronged *Carter v. Ball* standard as that which is required for a *prima facie* case. Nothing in the language of *Evans* indicates that a "better qualifications" showing is part of the *prima facie* case and *Boggan* is the only court to determine that *Evans*, or any other case, requires such a showing.[3] Accordingly, under relevant caselaw, the undersigned cannot conclude that Plaintiff is required to show that she is better qualified as part of her *prima facie* case.

In the Reply, Defendant additionally argues that, to make her *prima facie* showing, Plaintiff must show an "evidentiary connection between the plaintiff's race and the adverse employment decision," citing *Atere–Roberts v. Jeld–Wen, Inc.* 28 F.Supp 2d 976 (W.D.N.C.1998). This argument is unpersuasive for the following reasons.

In *Atere–Roberts*, the court relied on the Fourth Circuit's decision in *Holmes v. Bevilacqua*, 794 F.2d 142 (4th Cir.1986). In *Bevilacqua*, the Fourth Circuit held that in a failure to promote case, where the position had been filled (rather than left vacant), a plaintiff must show some other

---

**2.** Even at the pretext stage, *Evans* only requires a showing of better qualifications if "relative qualifications" is the only evidence of pretext. Where there is other evidence of pretext, Plaintiff is not required to show that she is better qualified. *See Gbenoba v. Montgomery County Dept. of HHS*, 209 F.Supp.2d 572 (D.Md.2002)(discussing the impact of the United States Supreme Court's decision in *Reeves, infra*, 530 U.S. at 133, 120 S.Ct. 2097, on *Evans'* requirement of "better qualifications" in light of the Fourth Circuit's decision

in *Dennis, infra*, 290 F.3d at 648). As discussed below, Plaintiff has presented ample non-"relative qualifications" evidence of pretext. Accordingly, even at the pretext stage, Plaintiff is not required to show she is better qualified.

**3.** The district court granted summary judgment for the defendant in *Boggan* and the decision was not appealed.

evidence that "race was a factor considered by [her] employer" as part of the fourth element of her *prima facie* case. *Bevilacqua,* 794 F.2d at 147.

■ However, the Fourth Circuit has explicitly recognized that the *Bevilacqua* court's reasoning on this issue is "incorrect" in light of the Supreme Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). *See, e.g., Blue v. U.S. Army,* 914 F.2d 525, 537 (4th Cir.1990). The *Patterson* Court held that to establish a *prima facie* case of discriminatory failure to promote, as to the fourth element, a plaintiff need only show that "after she was rejected respondent either continued to seek applicants for the position, or as alleged here, filled the position with a white employee." *Patterson,* 491 U.S. at 186–87, 109 S.Ct. 2363.

While the *Patterson* Court did not have occasion to explicitly overrule *Bevilacqua,* as noted above, the Fourth Circuit has recognized that *Bevilacqua*'s reasoning is incorrect in light of *Patterson* and has applied the *Patterson* standard in reported decisions. Moreover, the undersigned is not aware of any lower court decisions which continue to apply *Bevilacqua* post-*Patterson* except for *Atere–Roberts.*[4] *See, e.g., Obi v. Anne Arundel County,* 142 F.Supp 2d 655, 660 (refusing to apply *Bevilacqua* to require additional evidence at the *prima facie* stage (that race was a factor), noting that *Bevilacqua's* reasoning had been "disavowed" by the Fourth Circuit and "abrogated" by the Supreme Court in *Patterson* ). Under relevant caselaw, the undersigned cannot conclude that Plaintiff is required to make this additional showing as part of her *prima facie* case.

It is undisputed that Plaintiff is a black female, who applied and was qualified, for the position of Fire Captain. It is further undisputed that she was not promoted and the position was filled with a white male. Under *Carter v. Ball* and *Patterson,* this showing is sufficient to make out a *prima facie* case of discriminatory failure to promote.

### 3. Defendant's proffered legitimate, non-discriminatory reason

■ As Plaintiff made her *prima facie* case, the burden shifts to Defendant to show a legitimate, non-discriminatory reason for its failure to promote her. If Defendant does so, the burden shifts back to Plaintiff to show that this proffered reason is pretext for discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Ennis v. Nat'l Assoc. of Bus. and Educ. Radio,* 53 F.3d 55 (4th Cir.1995).

Defendant avers that John Keffer was promoted over Plaintiff because Keffer had more training hours, was an instructor at the Fire Academy and a scout leader, and was recommended for promotion by his supervisor. Defendant notes that Plaintiff was not recommended for promotion because her Battalion Chief thought she lacked "command presence."

### 4. Pretext for discrimination

As Defendant has proffered a reason for promoting a white male over Plaintiff which, if believed, is legitimate and nondiscriminatory. Thus, the burden shifts back to Plaintiff to show that this proffered reason is pretext for discrimination. *Id.*

---

**4.** The district court granted summary judgment for the defendant in *Atere–Roberts* and the decision was not appealed.

In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the United States Supreme Court clarified the Plaintiff's burden at the pretext stage. The *Reeves* Court made plain that a "plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 2109. Where a plaintiff makes this showing, *Reeves* held that plaintiff is not required to additionally show evidence that the real reason was discrimination—as is required under the "pretext-plus" standard—in order to survive summary judgment.

The Fourth Circuit reiterated that, under the *Reeves* standard: " 'if no rational factfinder could conclude that the [employer's job] action was discriminatory,' then the case should not proceed beyond summary judgment ... [b]ut in the absence of evidence requiring such a conclusion, a *prima facie* case and evidence of pretext raises a sufficient inference of discrimination to entitle a plaintiff to survive a motion for summary judgment." *EEOC v. Sears*, 243 F.3d 846 (4th Cir.2001)(*citing Reeves*).

Applying these principles, for the following reasons, Plaintiff has produced sufficient evidence of pretext to survive summary judgment. Looking at the totality of the circumstances, there is ample evidence from which it could be inferred that Defendant's asserted justification is false.

## A. Relevant facts

Ten firefighters were promoted to Fire Captain in December of 1998. (Doc. 10, Fincher dep., p. 38) After that round of promotions, Plaintiff's name was next on the promotions list. Her score was tied with John Keffer, a white male. On May 6 1999, Battalion Chief Kinniburgh sent an e-mail to Deputy Chief David Duffy in apparent response to a question regarding appraising Plaintiff for promotion. (Doc. 13, Ex. L). Kinniburgh's e-mail opined that Plaintiff "lacks confidence and command presence" and that "another year to prepare might be beneficial." (Id.) It noted that Plaintiff failed the next year's written exercise by two points, meaning that if Plaintiff were not promoted that year, she would not be eligible again the following year.[5] (Id.) Duffy testified that he does not remember the e-mail. (Doc. 10, Duffy dep., p. 17.) No similar opinion-gathering was done regarding Keffer.

Also during May, Fincher sent a "Potential Promotion Evaluation" form to Kinniburgh to fill out regarding Plaintiff and to Battalion Chief Mauer regarding Keffer. Kinniburgh was Plaintiff's Battalion Chief at the time. The evaluation was not used as a regular part of the process and was not mentioned on the Promotion Announcement given to potential candidates. (Doc. 10, Ex. B). The evaluation did not cover the same factors as those set out in the Announcement but instead focused almost exclusively on supervisory and personality characteristics. (Id., Doc. 10, Fincher Aff., Att. 1). The evaluation specifies that the candidates are not to be told that the form is being filled out.

In the evaluation, Kinniburgh repeatedly stated that when Plaintiff "rode the seat," or filled in as Fire Captain, she lacked confidence and command skills and stated that she needed more experience. (Id., Att. 2). Kinniburgh did not recommend

---

5. The process requires promotional candidates to take the written tests in the Spring of each year. The eligibility period for the prior year runs through the end of June. Thus, candidates often take the next year's tests even though they may still be promoted during the current year.

her for promotion. Keffer's Battalion Chief did recommend him, but did not comment on Keffer's level of confidence or "command presence."

During this time period, Plaintiff's direct supervisor, Captain Starnes, noted in her performance appraisals that when she "rode the seat," or acted as Fire Captain, she did "well in all aspects of the job" and performed the job "excellently." (Doc. 10, Burch aff., unnumbered p. 13). Starnes was never asked whether he thought Plaintiff should be promoted, nor did Kinniburgh or Fincher review Plaintiff's performance appraisals during the promotion process.

During the promotion process, Fincher reviewed only training records on Plaintiff and Keffer. (Doc. 10, Fincher dep., p. 36–37). Fincher testified that Keffer had three times as many training hours as Plaintiff. (Id., p. 42) He further testified that these training hours are not required to be promoted but are considered under "other relevant factors." (Id.) Fincher did not review any other personnel records such as performance appraisals, records of community relations activities, or letters of commendation for actions during a fire.

In addition to collecting the promotion evaluations, and reviewing training records, Fincher set up interviews with both candidates in June. Fincher, Duffy, and (former) Deputy Chief David Taylor were on the interview staff. During this process, the interview staff interviewed Plaintiff's current Battalion Chief, Larry Mackey and her current Fire Captain, Fred Lowery, about Plaintiff's performance. Both Lowery and Mackey testified that they told Fincher that they were uncomfortable evaluating Plaintiff because she had just been transferred to their station

less than days prior and they had not had sufficient time to give her a fair appraisal. (Id., Mackey dep., p. 19, Lowery dep., p. 10). Fincher did not attempt to interview Starnes, Plaintiff's previous Captain, with whom she had worked for years.

Fincher testified that the consensus of the "entire interview staff" was that Keffer was "by far the more qualified candidate for promotion." (Id., Fincher dep., p. 28) Former Deputy Chief Taylor contradicts Fincher's version of the interview staff's consensus. Taylor indicates that he personally recommended Plaintiff and saw nothing in the interviews which made Keffer a better choice. (Doc. 13, Taylor aff., Ex. G). Further, Taylor avers that Fincher was reluctant to interview Plaintiff and that he had to convince him to do so. (Id.)

## B. Application

There is ample evidence in the record from which it might be inferred that Defendant's proffered reasons are not credible.

### 1. Deviation from regular procedures

First, Defendant concedes that it deviated from its own promotion practices in not following the list sequentially and promoting John Keffer over Plaintiff. Deviation from regular procedures is a classic example of evidence used to show pretext. *See, e.g., Vaughan v. Metrahealth,* 145 F.3d 197 (4th Cir.1998).

Defendant contends that Fincher deviated from regular procedures because, for the first time, there was a tied score and only one position available as that year's eligibility list was expiring at the end of June.[6] Defendant contends that "there was more at stake than simply who would

---

6. In prior tied-score situations, employees were still promoted sequentially. Defendant contends that this is because, at the time of those promotions, Chief Fincher knew that enough slots were open for all to be promoted in that eligibility year.

be promoted first; it was the last opportunity for one of [them] to be promoted that year." (Doc. 11, p. 21).[7] Defendant argues that under these "new, unusual circumstances," Chief Fincher made the decision to deviate from the sequential promotion and look at the "other relevant factors" listed in the Promotional Announcement.[8]

However, timing does not seem to support Defendant's contentions. Defendant contends that the Fire Captain position came open in June, forcing them to choose between tied candidates for one slot because the eligibility list expired at the end of June. (Doc. 10, Fincher aff., para. 12, Hardison aff., para. 8). By early May, however, Defendant was opinion-gathering regarding Plaintiff as evidenced by Kinniburgh's e-mail dated May 5, 1999. Further, Fincher admitted that they started "preparing to interview" Plaintiff and Keffer to "see where they were" in May. (Id., Fincher dep., p. 35.) Thus by early May, at the latest, the decision was already made to deviate from the regular procedures and not promote sequentially. Fincher could not have known that only one slot would open up in June at the time he decided to deviate from procedure. This is because even if Fincher knew in May that the June slot was opening up, there is no evidence that he could have known that it was the only slot which would be available through the end of June. Fincher himself testified, when explaining why promotional candidates take the next year's eligibility tests in April and May, that at that point in the year (April and May), you "don't know who's going to

retire in June." (Id., p. 40). Thus, a jury could infer from this evidence that the fact that only one spot existed could not have been the reason for the deviation.

## 2. Inconsistent explanations

Pretext can be inferred from an employer's inconsistent explanations for job actions. See Sears, supra, 243 F.3d at 853; Dennis v. Columbia Colleton Medical, 290 F.3d 639 (4th Cir.2002). Defendant has given different explanations for his decision to promote Keffer over Plaintiff. At the grievance hearing, Fincher, while citing the difference in training between the two candidates and the fact that Keffer was recommended and Plaintiff was not, also stated that Plaintiff was rejected because she needed more experience and to develop her skills. (Doc. 10, Burch att. 5, unnumbered p. 3). Defendant now contends that Plaintiff was rejected only because of the difference in training and recommendations, not because Plaintiff needed more experience. Fincher testified that had Keffer not been a competing candidate, Plaintiff would have been promoted, belying any concerns over her level of experience. (Id., Fincher dep., p. 41–42).

## 3. Difference in evaluation of candidates

Pretext can be inferred when an employer evaluates candidates differently. See Dennis, supra, 290 F.3d at 639. For Plaintiff, Defendant sought evaluations from supervisors who, because of her recent transfer to a new station, did not know Plaintiff well enough to recommend her. As noted above, no one asked Plain-

---

7. Defendant concedes that multiple Fire Captain slots open every year.

8. The Promotional Announcement states that in his discretion, the Chief can take "other relevant factors" into consideration in making the promotional decision. These factors are productivity, ability to work with others, training, and experience. (Doc. 10, Ex. B). There is no evidence these factors have been used by Fincher in a promotional decision before or since Plaintiff was rejected for promotion.

tiff's prior Captain, Starnes, to evaluate her despite the fact that he was in the best position to know her abilities and had given her positive performance appraisals right up to her transfer. For Keffer, Defendant obviously sought evaluations from supervisors who were familiar with his work because they were able to give a positive evaluation of his performance. Fincher, in turn, testified that he relied upon this information in promoting Keffer instead of Plaintiff. (Doc. 10, Fincher dep., p. 38.)

Moreover, Fincher testified that Keffer's service as a scout leader made him a better candidate than Plaintiff. It is not clear how he knew about this community service activity of Keffer's. It is clear that he was unaware of Plaintiff's community service activities because he only reviewed training records. A jury could infer pretext from Defendant's inconsistent information-gathering as to the two candidates.

### 4. Reasons unsupported by the evidence

Pretext can be inferred when an employer's reasons are unsupported by the evidence. *Sears, supra,* 243 F.3d at 854. Several aspects of Defendant's explanations are unsupported by the evidence. First, as discussed above, the timing of the decision raises questions as to Defendant's explanation regarding a tie. Second, the Promotional Announcement does not mention the tie scenario, nor does it provide for the procedure chosen by Fincher.

Third, Defendant contends that, because the scores were tied, it relied on the "other relevant factors" listed in the Announcement, i.e., training, productivity, experience, and ability to work with others. Defendant contends that it did not give Plaintiff credit under the "experience" factor, despite the fact that she had worked there longer than Keffer, because she already received points for length of time on the job in compiling her total score.[9] However, there is a difference between receiving credit for an individual's length of service and receiving credit for more experience than your competition. Defendant's contention is unsupported by the Announcement itself because if candidates could not receive experience credit beyond that earned in computing the score, there is no reason to include "experience" as an additional relevant factor.

Fourth, Defendant contends that "command presence" is of "huge public importance" in selecting Fire Captain candidates. Yet, "command presence" is not mentioned in the Promotional Announcement which sets out the factors to be considered when promoting to Fire Captain, nor is it mentioned in Keffer's Promotional Evaluation. Fifth, Kinniburgh's Promotion Evaluation of Plaintiff, in which he refused to recommend her because of her deficiencies when "riding the seat" (acting as a Fire Captain) is brought into question by Plaintiff's performance appraisals by her direct supervisor, Starnes, who opined that she performed well or excellently in all aspects of that position. Sixth, Fincher's contention that he decided to proceed with interviews despite receiving Kinninburgh's unfavorable recommendation is disputed by Taylor's affidavit, which maintains that he had to convince Fincher to interview Plaintiff. Seventh, Fincher's contention that Keffer was the choice of the "entire" interview staff "by far" is disputed by Taylor's affidavit, which indicates that Taylor recommended Plain-

---

**9.** Plaintiff and Keffer received the same number of points toward their total score, despite the fact that Plaintiff had worked there long-er, because they both exceeded the cut-off length of service to earn these points.

tiff for promotion. For all of these reasons, a jury could infer pretext because Defendant's explanations are unsupported, or contradicted, by the evidence.

### 5. Evidence of racism

Pretext can be inferred when there is evidence of racism, such as stray comments by an employer, which are not directly connected to job action such that they could be considered direct evidence of discriminatory action. *See Gairola v. Commonwealth of Virginia,* 753 F.2d 1281 (4th Cir.1985)(stray comment by co-worker mocking Hindu attire was pretext evidence).

Plaintiff has presented evidence that during a meeting with African–American employees, Fincher stated that he had "racism in him" and that everyone has racism in them. Defendant contends that this comment is too far removed from the action regarding Plaintiff to be considered by a trier of fact. While Defendant is correct that this comment could not constitute direct evidence of discrimination, it can be considered as evidence of pretext. *See Employment Discrimination* Law, Pfeiffer, ed., Third Ed., 2000 Supplement, Ch. 2, p. 38 ("plaintiffs may demonstrate pretext by presenting statements by supervisors and managers that exhibit bias yet fall short of direct evidence") and reported cases.

In conclusion, given the foregoing evidence by which pretext could be inferred in this case, the undersigned does not conclude that "no rational factfinder could conclude that the [employer's job] action was discriminatory." In the words of *Sears (citing Reeves),* "in the absence of evidence requiring such a conclusion, a *prima facie* case and evidence of pretext raises a sufficient inference of discrimination to entitle [P]laintiff to survive a motion for summary judgment." *EEOC v.*

*Sears,* 243 F.3d 846 (4th Cir.2001)(*citing Reeves*). Accordingly, Defendant's motion for summary judgment should be denied.

## V. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED THAT** Defendants' motion for summary judgment (doc. 10) be **denied**. Further, according to the docket report, the parties did not attend mediation as is required by the Local Rules and ordered by this Court (doc. 9). Thus, **IT IS HEREBY ORDERED THAT,** unless the parties settle this case on their own, they must conduct mediation and file report on mediation by October 31, 2002. In order to give the parties time to settle or mediate, the trial date is continued to January 27, 2003.